United States, was authorized by the 3d section of the act of March 3, 1836 [5 Stat. 80], c. 270; and that his sureties were responsible for his default in not paying over and accounting for the same, as they are for his not accounting for the money received in the ordinary discharge of his duties as postmaster." It is to be remembered, that the postmasters in different cities or towns are in fact and in law deputies, or agents of the postmaster-general. It was once contended, that he on that account was liable for their default. But their agency being public, and the liabilities of each regulated by law without imposing such a responsibility over on him, he has not in such cases been made chargeable for their misfeasances. Thus it was held in the following cases, after much deliberation, that the postmaster-general is not liable personally or officially for the neglect or wrong of a deputy or of a letter or mail carrier. Whitfield v. Lord Le Despencer, Cowp. 754; Lane v. Cotton, 1 Ld. Raym. 646, 12 Mod. 472; 3 P. Wms. 394, note; Story, Ballm. § 461 et seq. They are still, however, his agents, and are liable to be called on as such to transact business for him, connected with his official duties. One of his duties is to collect and disburse the money received for postage, and to keep it safely till expended. Hence he can make his deputies agents for this purpose, within convenient limits; and the sureties, as in respect to the collections of each deputy at his own office, do not act in the dark or at random, as to their responsibilities, because they cannot be held liable beyond the amount of the penalty in their bond, and they knowingly and deliberately stipulate to be liable to the extent of that. Besides this, in the bond itself, the acting of postmasters as agents is thus recognized:— Said Todd "shall also faithfully do and perform, as agent for the general postoffice all such acts and things as may be required of him by the postmaster-general, and moreover shall faithfully account with the United States for all moneys, bills, bonds, notes, receipts, and other vouchers, which he as agent aforesaid shall receive for the use and benefit of said general postoffice." The act of 1836 [5 Stat. 79], c. 270, § 1, which requires the revenues and debts due to the postoffice department, to be paid into the treasury of the United States, and the money disbursed, to be drawn therefrom, does not refer to each individual collection or payment, but the aggregate quarterly and yearly collections and expenditures. This is, in order to make them appear on the exhibit of the annual receipts and expenditures of the country, and also in the annual appropriations, which was not the case formerly. This is effected by large "covering warrants," quarterly or otherwise, and not by a deposit and warrant in each individual case over the Union; else the labor and details would be insuperable, without a great additional force in the department. The collections, then, till

disbursed, are kept as formerly by the postmaster-general with his deputies, or, when safe deposit banks exist, with them. The responsibility of depositing is usually small on this account, as the current demands of the deposit, being greater, or as great as the receipts, quickly and constantly absorb most of the receipts.

There are several other points, stated in argument, and at the trial. But as these alone were made at the time of the charge to the jury, and as the rulings or opinions concerning others, such as the accounts of Todd being all open and running, or the bond being joint, instead of joint and several, even if incorrect, do not reach and alter the merits of the case, as decided on other grounds, it is unnecessary to enlarge upon them. For the reasons I have given, let the judgment below be affirmed.

## Case No. 1,637.

### In re BOOK.

[3 McLean, 317.] [1]

Circuit Court, D. Ohio.  Dec. Term, 1843.

BANKRUPTCY—PRACTICE — PETITION BY INFANT — How BROUGHT—EFFECT OF JUDGMENT—RELIEF FROM TORT — DISCHARGE—"PERSONS IN INTEREST."

1. A formal plea in bankruptcy is not necessary nor usual, and, if filed, will be treated as a motion.

2. An infant is entitled to the benefit of the bankrupt act.

3. The proceedings may be had in his own name.

4. The bankrupt law relieves against a judgment for a tort.
[See In re Comstock, Case No. 3,073.]

5. Any one interested in the administration of the effects of the bankrupt may object, though technically he is not a creditor.
[Cited in Re Sheppard, Case No. 12,753; Re Derby, Id. 3,815.]

[On certificate from the district court of the United States for the district of Ohio.

[In the matter of Samuel Book. Answers certified.]

Shannon & Carroll, for bankrupt.

OPINION OF THE COURT. The following points have been certified to this court from the district court, under the bankrupt law.

1. "Whether a plea in abatement is a regular and authorised form of opposition to a petition in bankruptcy, and whether the motion filed in the above case to strike out such plea ought to prevail." Formal pleading in such a case is not usual or necessary; but there is no reason why the objection should not be so stated. The form of the objection may be governed by the discre-

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

tion of the party making it. The plea should be treated merely as written objections.

2. "Whether the infancy of the applicant is good grounds of opposition to his discharge as a bankrupt." An infant is bound to pay certain debts. The bankrupt law extends its benefits to all persons who are in a state of bankruptcy, without exception as to persons; fiduciary debtors only are excepted. An infant, therefore, may claim the benefit of the bankrupt law. When an infant brings his case within the bankrupt law, the law vests his property in the assignee.

3. "Whether the fact of the applicant's being a minor, petitions in his own behalf and in his own name, and not by his next friend, is a good ground of opposition to his discharge as a bankrupt?" If an infant be a proper subject of the bankrupt law, it would seem to follow that he may make application in his own name.

4. "Whether a judgment in a court of law obtained in an action of tort, is a debt dischargeable under and by force of the bankrupt law?" As the law makes no exception as to debts, except those of a fiduciary character, the discharge is from all other debts.

5. "Whether a creditor who has not proved his debt, and is not otherwise interested as a creditor in the proceedings in bankruptcy, can appear and contest the right of the applicant to his discharge?" By the 4th section of the bankrupt law, "notice to all creditors who have proved their debts, and other persons in interest, to appear to show cause why such discharge and certificate shall not be granted," is required.

In Re King, S. D. N. Y. [Case No. 7,784], it was held, "that the terms, 'other persons in interest,' used in the 4th section, are employed to designate those who could not prove debts as creditors, and does not embrace, but excludes creditors." That these words may embrace those who are not properly creditors, but have an interest in the matter, may be admitted; but that they exclude creditors who have not proved their debts, is a gratuitous assumption not warranted by law. In 5 Law Rep. 263 [In re Tebbetts, Case No. 13,817], Justice Story says, in reference to this clause, "if the objectors in that case are not strictly creditors of the bankrupt, they are at least equitably creditors, and have an interest in the property to be administered in bankruptcy."

The above answers may be certified to the district court.

----

BOOK (UNITED STATES v.). See Case No. 14,624.

BOOKER, The HELEN E. See Case No. 6,330.

BOOM CO. (MASON v.). See Case No. 9,232.

## Case No. 1,638.

BOOMER et al. v. UNITED POWER PRESS CO. et al.

[13 Blatchf. 107; 2 Ban. & A. 106.][1]

Circuit Court, S. D. New York. Aug. 23, 1875.

PATENTS—CHEESE PRESSES — REISSUE — ASSIGN- MENT — ACTION FOR INFRINGEMENT — MEASURE OF DAMAGES—INJUNCTION.

1. Letters patent were granted to George B. Boomer, Rufus E. Boschert and Thomas G. Morse, November 1st, 1870, for an "improvement in cheese presses." They were reissued to Boomer and Boschert, January 28th, 1873. The claim of the original patent was, "A cheese press, composed of the double frame A, a, A', the press beam B, h, H, sliding standards G, G, double levers C, C, nuts e, and the screw D, with a hand-wheel F, and square end d, all constructed, arranged and operating substantially as described." The claim of the reissue was: "In combination with the sliding standards, supported laterally and guided in the frame of the press, the double screw-shaft supported in or against the sliding standards, substantially as and for the purpose described." It was contended that the reissued patent was for a different invention from the original patent, because the claim of the reissue did not include in the combination the press beam, the double levers and the nuts. The invention was an improvement in a press in which double levers and a press beam were necessary, and they were fully described in the specification, and the only ingredients which entered into the invention were those specified in the claim of the reissue: Held, that the objection was not tenable.

[Cited in McWilliams Manuf'g Co. v. Blundell, 11 Fed. 420.]

2. As the claim of the reissue embraces the improvement invented, and the elements of the invention are operative in connection with the mechanism described in the specification, the claim is not invalid because the elements specified in it do not, of themselves, accomplish anything.

3. The reissue is not invalid for want of novelty.

4. The plaintiffs, after bringing this suit, conveyed away their exclusive right to the patent for all of the United States, except the New England states and Ohio, reserving their rights "so far as they are connected with said suit, with the profits and damages therein, and the right to have said patent declared valid, and for an injunction:" Held, that the plaintiffs reserved no right to damages or profits for infringements committed after the conveyance, and were entitled to a decree for the damages and profits down to the time of the conveyance, but not to an injunction.

[In equity. Bill by George B. Boomer and Rufus E. Boschert against the United Power Press Company and others for an accounting, and for an injunction to restrain the infringement of patent No. 108,753. A decree was given for complainants for an account, and directing an ascertainment of damages to April 10, 1874, with costs.]

William B. Smith and Andrew J. Todd, for plaintiffs.

John Van Santvoord, for defendants.

----

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge; reprinted in 2 Ban. & A. 106; and here republished by permission.]