JOHN B. ATWATER and another *vs.* MANCHESTER SAVINGS BANK and others.

SAMPSON A. REED *vs.* SAME.

February 13, 1891.

**Conveyance in Trust to Pay Charges—Judgment Lien on Grantor's Equity.**—Where land has been conveyed in trust to pay certain charges upon it, and certain specified debts of the grantor, the residuary interest or estate of the grantor is subject to the lien of an attachment or judgment, and to sale on execution.

**Same—Equitable Interests Subject to Execution.**—In this state, equitable, as well as legal, estates in land are subject to sale on execution.

**Execution or Foreclosure Sale—Redemption by Attaching Creditor.** One who has brought suit upon a contract, express or implied, for the payment of money only, and has attached the real estate of the defendant, is "a creditor having a lien," within the meaning of Gen. St. 1878, *c.* 66, § 323, and chapter 81, § 16, relating to the redemption of real estate.

**Judgment by Confession—Sufficiency of Statement.**—In judgment by confession, a statement of the facts out of which the confessed indebtedness arose is sufficient, if it contains enough to enable creditors and others to investigate the *bona fides* of the judgment.

**Confession of Judgment after Mortgage Sale—Redemption by Judgment Creditor—Fraud on Purchaser at Sale.**—The owner of land, whose title was in litigation, made a contract with his attorney to convey to him, for his services, one-third of the land in case he succeeded in recovering the land. The attorney brought the litigation to a successful termination, but in the mean time certain mortgages executed by the owner having been foreclosed, and the time of redemption about to expire, and the owner not being able to redeem, he confessed judgment in favor of his attorney for his services, for an amount which does not appear to have been in excess of the value of one-third of the land. The judgment was confessed to enable the attorney to redeem the land, and thereby secure compensation for his services. *Held,* that the confession of judgment was not a fraud on the purchasers at the mortgage sales.

These were two actions brought in the district court for Hennepin county,—the former by attaching and the latter by judgment cred-

itors of Maria B. Nell,—the relief sought in each action being a decree that on the payment into court by plaintiff of the money theretofore tendered to the sheriff for redemption of certain lands sold under foreclosure of a mortgage made by Nell, a proper certificate of redemption should be issued, and, in default of such certificate, that the decree stand in place thereof. The actions were tried by *Hooker*, J., who ordered judgment for plaintiff in each case. The defendants in each case appeal from an order refusing a new trial.

*Hawley & Hall* and *Ueland, Shores & Holt*, for appellants.

*A. B. Jackson*, for respondents in first case.

*James W. Lawrence*, for respondent in second case.

MITCHELL, J. In each of these cases the question involved is the right of the plaintiffs to redeem from a mortgage sale; and as both grow out of the same general state of facts, and are more or less connected with and dependent upon each other, they can be better considered together. So far as material to explain the legal questions involved, the facts are these: A Mrs. Nell, who owned a 40-acre tract of land, but the title of which was then in litigation, (*Nell* v. *Dayton*, 43 Minn. 242, 45 N. W. Rep. 229,) in March, 1886, executed two mortgages,—one on the west half and the other on the east half of the tract. Default having been made in the conditions of these mortgages, they were both foreclosed, and the premises sold on December 14, 1888. The time for redemption would of course expire December 14, 1889. On August 1, 1889, Mrs. Nell executed to Seagrave Smith the trust-deed, Exhibit A, upon the entire tract. On December 12, 1889, Atwater & Hill commenced an action against Mrs. Nell to recover a debt which they alleged she owed them for services as attorneys, and on the same day caused an attachment to be issued in the action, and levied on the whole tract. On December 14, 1889, Mrs. Nell confessed judgment in favor of plaintiff Reed for a debt due him for services performed and money expended for her as attorney. This judgment was docketed on the same day. On December 14, 1889, Atwater & Hill and Reed each filed notices of intention to redeem from both foreclosure sales,—Atwater & Hill under their attachment lien, and Reed under his judgment lien. Smith had never done anything with the land under the trust-deed, Exhibit A, nor did either he

or Mrs. Nell make any redemption. Within five days after the expiration of one year from the date of the sales, and on December 19th, Atwater & Hill did everything necessary to effect a redemption of the west half of the tract, but made no attempt to redeem the east half. Within five days thereafter, and on December 21st, Reed did everything necessary to effect a redemption of the east half. But in both cases the sheriff who made the sales, and the defendant bank, which held the certificates of sale, refused to accept the money or to execute certificates of redemption. Hence these suits to compel them to do so.

1. The first question that arises is whether, after the execution to Smith of Exhibit A, Mrs. Nell had remaining any interest or estate in the land upon which plaintiffs' attachment and judgment were liens; for if not, then plaintiffs were not "creditors having a lien," and had no right to redeem. Counsel have discussed at great length the questions whether Exhibit A was a trust or merely a power in trust, and, if the former, whether it was valid under the statute of uses and trusts. Under the view we have taken of the case, it becomes unnecessary to consider these questions. We shall assume that the instrument is all that defendants claim it to be, viz., a valid trust,—a conveyance of the land to Smith in trust to pay certain charges upon it and to pay certain specified debts of the grantor. Defendants' contention is that, as thus construed, it vested in Smith the whole estate in the land, so that no title or interest remained in Mrs. Nell to which a lien could attach. That she had a residuary interest in the land cannot be questioned. The deed itself expressly provides that, "if there be more than sufficient to pay all of said claims in the manner as aforesaid, then the said trustee shall grant, convey, and set over to said Nell, her heirs," etc., "all of the rest and remainder of said property." This is nothing more than the law would imply, for such a residuary interest necessarily arises in every case where property is assigned in trust to pay debts or to satisfy other specified objects. Had Mrs. Nell herself paid all the charges and debts specified in the deed of trust, the entire beneficial interest in the land would have been in her. Or if the trustee had accomplished all the purposes of the trust by executing mortgages, the land subject to the

mortgages would have been, hers.   So if he had accomplished these purposes by selling only a part of the land, the residue would have been hers.   In speaking of the similar residuary interest of a bankrupt in real estate assigned to an assignee in bankruptcy, this court said that it may be classified under our statute (Gen. St. 1878, c. 45, §§ 12, 33) as a *reversion*, subject to be defeated by a sale by the assignee; that after the purposes of the trust are accomplished the residuum of the property would revert by operation of law without any reconveyance. *King* v. *Remington*, 36 Minn. 15, 32, (29 N. W. Rep. 352.)   If this be so, then Mrs. Nell's interest in the land was subject to the lien of an attachment or judgment, and to sale on execution, for, of course, a reversion in land is a legal estate.

But if her interest was merely an equitable one, the same result would follow.   At common law the rule undoubtedly was that a mere equitable estate in land could not be sold on execution, for the familiar reason that courts of law did not recognize equitable estates, and could not deal with them.   But a judgment creditor was not in such cases without remedy.   He could file his bill in a court of chancery, which always held that, for its purposes, these equitable interests were just as much bound by the judgment as legal estates, and could be subjected to its satisfaction by equitable process; and in adjusting the conflicting rights of creditors it always followed, by analogy, the rules of the common law.   It is true that the courts of chancery held that the lien or right to obtain satisfaction out of the specific property sought to be subjected to sale for that purpose dated from the filing of the bill.   But this was also in strict analogy with the law, for at common law the judgment was not a lien on real property, but it was the judgment creditor who first extended the land by *elegit*, or whose execution was first begun to be executed, who was entitled to priority; and a bill in equity to reach the property for the satisfaction of a judgment was considered as being in the nature of an equitable execution.   But when the law was changed so as to make judgments liens from the date of their docketing there can be no reason why a court of equity, still following the analogy of the law, should not and would not hold that equitable interests in land were subject to the liens of judgments in the order of their priority

in date. See *Hale* v. *Horne*, 21 Grat. 112. The modern tendency of both courts and legislatures is, as far as possible, to do away with the distinction between legal and equitable estates. The old rule that a judgment lien did not attach to a mere equity has been abolished in England, and in the great majority of the states of the American Union, by statutes expressly declaring that a judgment shall be a lien on all the interests of the judgment debtor in real estate, whether legal or equitable. In Pennsylvania the same result is reached without the aid of a statute, upon the ground that, as they have no courts of chancery from which the creditor might have relief, therefore, from necessity, they must establish the principle that both judgments and executions have an immediate operation on equitable estates. *Auwerter* v. *Mathiot*, 9 Serg. & R. 396, 402. In this state there is no express statute declaring that a judgment shall be a lien on an equitable estate; but when we consider that the common-law rule on the subject was purely technical, and arose out of the supposed inability of courts of law to deal with equitable estates, and that in this state all distinction between courts of law and courts of equity has been done away with, and that the same court now administers both legal and equitable remedies in the same action, it must be evident that all reasons for the old rule have ceased to exist. And there is nothing in our statutes indicating any intention to retain any distinction in this respect between legal and equitable estates. Gen. St. 1878, *c.* 66, § 277, provides that "the judgment, from the time of docketing the same, becomes a lien on *all the real property* of the debtor;" and section 300 of the same chapter provides that "all property, real, personal, or mixed, * * * may be levied upon and sold on execution." This language is certainly broad enough to include both legal and equitable interests in real property; and, in view of all the circumstances, we do not think it is going too far to hold, as we do, that it was so intended, and that now any interest or estate, either legal or equitable, (at least if a vested one,) of the debtor, is subject to the lien of an attachment or judgment, and to sale on execution. The decision of this court that the interest of a vendee under an executory contract for the sale of land is subject to the lien of a judgment, and to sale on execution, proceeds, and can

only be sustained, upon this ground.  *McCarthy* v. *Van Der Mey*, 42 Minn. 189, (44 N. W. Rep. 53.)  Our conclusion, therefore, is that Mrs. Nell had an interest in this land which was subject to the liens of plaintiffs' attachment and judgment.

2. The next question which arises in the case of Atwater & Hill is whether an attaching creditor, who has not yet obtained judgment, is "a creditor having a lien, legal or equitable," within the meaning of Gen. St. 1878, *c*. 66, § 323, and chapter 81, § 16.

A "creditor," even in the strict technical sense of the term, is any one who has a right to require the fulfilment of an obligation or contract for the payment of money,—any one who has a debt or demand against another upon contract, express or implied, for the payment of money.  A "lien" is defined as a hold or claim which one person has upon the property of another as security for some debt or charge. And while an attachment on mesne process differs in some respects from either common-law, maritime, or equitable liens, yet it is a statutory lien, constituting a hold on the property of the defendant, for the payment of such judgment as the plaintiff may recover. Both in statutes and the decisions of courts it is everywhere denominated a "lien."  Hence one who has brought an action upon a contract for the payment of money only, as did Atwater & Hill, and attached the property of the defendant, is "a creditor having a lien," within the ordinary and literal meaning of that expression.  But defendants' contention is that the liens to which the statute refers are those which they term absolute and perfect, fixed and definite, either by judicial determination or by the contract of the parties, as by judgment or mortgage; that the statute does not refer to or include a mere provisional and inchoate lien like that of an attachment on mesne process.  No such limitation is to be found in the language of the statute itself, and if it is to be imported into it by implication the reasons for it must be found elsewhere.  Such a limitation of this apparently unambiguous language can only be justified on the grounds, either that it is implied from other provisions of statute on the same subject, or that a literal construction is inconsistent with the general purpose of the laws, or would be impracticable and lead to unreasonable or absurd results.  The statute provides for two

kinds of redemption,—one, within a year after sale, by the mortgagor or judgment debtor or his assigns, which annuls the sale, and which, for convenience, may be called an "owner's" redemption; the other, after the expiration of the year, by creditors, which operates as an assignment of the right acquired under the sale, and which may be called a "creditor's" redemption. Both are made out of court, by the mere act of the parties, without any judicial determination of their rights. This "creditor's" redemption is wholly the creation of statute, and unlike anything known to equity jurisprudence. The great object of it is to have the debtor's property go as far as possible towards the payment of his debt; and this is for the benefit of both debtor and creditor. This being the policy of the law, it is just as much to the interest of the debtor to have a debt satisfied which is not in judgment or secured by mortgage as one which is; and a creditor whose claim is not in judgment or secured by mortgage is just as much entitled to have his debt paid as a judgment creditor or mortgagee. So there is nothing in the policy of the law which requires any such restricted construction of its language as contended for by defendants.

Neither is there anything in the history of legislation on the subject in this state to indicate that the law-makers intended to use the language in any such limited sense. Under the Revised Statutes of 1851, (chapter 71, §§ 112–117,) in case of an execution sale, a "creditor's" redemption was in express terms limited to judgment creditors and mortgagees; and in case of a mortgage sale (chapter 85, § 11) no "creditor's" redemption was allowed at all, unless it was, under section 18, to mortgagees, which, however, seems to have been an "owner's" redemption, which annulled the sale. This remained the state of the law until the enactment of Laws 1858, *c.* 61, (Pub. St. 1858, p. 646,) amending Rev. St. 1851, *c.* 71, § 115, which attempted, although in a very crude manner, to provide a comprehensive system of redemption from all sales "upon the execution, judgment, order, or decree of any court of this state, or upon the foreclosure, by advertisement or otherwise, of any mortgage, contract, or liability." This act provided for an "owner's" redemption within one year from the date of sale; also that "*other creditors* of the original judgment

debtor or mortgagor" might also redeem within the year, the owner, however, having a right to redeem within a year from each such redemption.   The expression "other creditors" was not defined, although the use of the word "other" would seem to imply that they were creditors of the same class as those by whom the property had been sold, that is, creditors having a judgment, decree, order, or mortgage upon which the premises might be sold, which would leave the right of redemption as limited as before.   That it did not mean creditors generally, is apparent from the fact that section 117, c. 71, providing what proof a redemptioner should produce, was left unchanged.   The act of 1862 (Laws 1862, c. 19) made no change in respect to the parties who had a right to redeem, although section 5 made some changes in regard to the proof which a redemptioner should produce, which, however, are not here important.   The next change was by the General Statutes of 1866, which revised the whole law on the subject, and left it in substantially the same shape in which we have it to-day.   In making this revision, the commissioners retained many of the provisions of previous acts, but introduced some entirely new sections, particularly section 323, c. 66, and section 16, c. 81, Gen. St. 1878, in which, for the first time, appeared the expression, "a creditor having a lien, legal or equitable."   Section 5 of the act of 1862, providing what proof a redemptioner should produce, was retained without change, and is now found as section 325 of chapter 66, and section 14 of chapter 81, Gen. St. 1878.

It is a noticeable fact that, when the Revision of 1866 was made, in every other state, (some 15 in number,) with one possible exception, in which a "creditor's" redemption after sale was allowed, as well as in our own state, at least under the Revised Statutes of 1851, the right was limited in express terms to creditors having a lien by mortgage, judgment, or decree.   It is highly probable that the commissioners were familiar with this fact, and had it in mind when introducing changes in our statutes.   And if they intended to incorporate or retain any such limitation in our laws, it would seem that they would have expressed it in plain and unambiguous language. The fact that they did not, but on the contrary coined and adopted a new expression of their own, strongly indicates that they intended

to extend the right of redemption beyond what had previously obtained here or elsewhere, and that they used the phrase "a creditor having a lien" in its common and literal sense.

In support of his contention that an attachment is not a lien, counsel quotes some remarks of Judge Story in *Ex parte Foster*, 2 Story, 131, to the effect that an attachment was not a lien within the meaning of section 2 of the bankrupt act of 1841; that it did not come up to the exact definition or meaning of a lien in the general sense of either a common-law, maritime, or equitable lien,—which is perhaps true. But, as against his construction of the act referred to, we may cite *Kittredge* v. *Warren*, 14 N. H. 509; *Same* v. *Emerson*, 15 N. H. 227; and *Davenport* v. *Tilton*, 10 Met. 320,—in which last case Judge Shaw very pertinently remarks that, in the construction of statutes, not much aid can be derived from considerations of mere expediency or general equity; that, however strongly they may influence the legislature in framing statutes, they cannot change their construction when the terms are not doubtful.

Neither do we find, in other provisions of statute relating to redemptions, anything that, by implication or otherwise, excludes attaching creditors from the class of redemptioners. The only one that has any bearing upon the question is the section providing what proof a proposed redemptioner must produce. The requirements of that section (section 14, c. 81) clearly imply that the lien must be of record. This is implied not only from the nature of the proof required, but also from the fact that it is essential for the purpose of fixing the order in which parties are to exercise the right of redemption. But an attachment lien on real property is as much a matter of record as the lien of a mortgage or judgment. The requirement of an affidavit of the amount actually due would, by implication, limit the term "creditor" to its strict and proper sense, of one who has a claim for money due on contract, to the exclusion of those whose claims are for unliquidated damages, at least in actions for torts, who could not well make such an affidavit. See *Fisher* v. *Consequa*, 2 Wash. C. C. 382. But we see no serious difficulty of this kind in the case of a demand due on a contract for the payment of money, where the contract itself, either expressly or by implication

of law, furnishes the standard by which the amount of the debt is to be measured.

Much stress is laid by counsel upon the supposed practical difficulties and evils which would arise from allowing redemptions on attachment liens, where the plaintiff may never obtain judgment, or where his attachment may be vacated. While there is some force in these suggestions, yet they go to the expediency of the statute, rather than its construction. The objections obtain with greater or less force to all redemptions out of court, without any judicial determination as to the rights of the parties. Even if the right of redemption be limited to mortgage and judgment creditors, it may prove, after the redemption has been made, that the mortgage or judgment was void or had been previously satisfied. But these difficulties are more imaginary than real. Our impression is that it has been the general understanding of the bar that attaching creditors were redemptioners under the statute, and yet we have never heard of many serious complications growing out of such a construction of the law. And the fact that the profession has generally put this construction upon the statute for so many years is an additional, although not a controlling, reason why the courts should adopt it. An illustration of how the statute has been generally construed is to be found in *Kling* v. *Childs*, 30 Minn. 366, (15 N. W. Rep. 673,) in which, while the point was not raised, both counsel and court seem to have assumed that an attaching creditor had a right to redeem.

3. In the *Reed Case* the defendants attack the validity of the plaintiff's judgment on two grounds: (1) That the statement for judgment is on its face insufficient, for the reason that it does not state the facts out of which the confessed indebtedness arose; and (2) that the judgment was fraudulent, and not confessed for any actual indebtedness. The statement is that "the said indebtedness is due from me, the said Nell, to said Reed, on account of services and moneys paid out by Seagrave Smith and said Reed, late copartners as Smith & Reed, paid and performed at my special instance and request, between the first day of October, 1887, and the first day of March, 1889, and that said amount has not been paid, but is now all justly due and owing; that the said Smith & Reed, for a valuable consideration to them paid

prior to the confession of this judgment, sold, assigned, and set over the same to the said Reed." This is a good statement, even as against subsequent creditors, in whose favor such statements are strictly construed, and who would stand in much better position to attack them than do these defendants. Formerly some courts were inclined to hold with exceeding strictness against statements for confessions of judgment, when attacked by creditors; but the general doctrine of the later cases is to the effect that the requirement that the facts be stated out of which the indebtedness arose is intended to enable other creditors to test the *bona fides* of the transaction by which a particular debt is preferred; that it is not the object of the statute to compel the debtor to state sufficient of the transaction to enable other creditors to form an opinion, *from the facts stated,* as to the integrity of the debtor in confessing judgment, but that all that is required is to state facts sufficient to enable them to investigate the transaction, and form their opinion of the honesty of the judgment from the facts thus ascertained. *McDowell* v. *Daniels,* 38 Barb. 143; *Harrison* v. *Gibbons,* 71 N. Y. 58; *Kern* v. *Chalfant,* 7 Minn. 393, (487;) *Cleveland Stove Co.* v. *Douglas,* 27 Minn. 177, (6 N. W. Rep. 628.) This in substance is recognized as the correct rule in *Wells* v. *Gieseke,* 27 Minn. 478, (8 N. W. Rep. 380.) Tested by any such rule, the statement in this case is amply sufficient.

Plaintiff contends that the defendants cannot attack the judgment collaterally in this action on the second ground. Passing this question without deciding it, we are of opinion that the evidence does not sustain this objection to the judgment. It appears that, the title to this property being in litigation, Mrs. Nell employed Smith & Reed as her attorneys in the matter, and made a contract with them to give them for their services and expenditures in her behalf, in case of their success, one-third of the land upon termination of the suit; that in pursuance of this agreement they performed services and expended money, and prosecuted the suit to a successful termination, but in the mean time, by reason of the foreclosures already referred to, the land was about to be wholly lost to both her and them, she being unable to redeem. In this juncture of affairs, Mrs. Nell, recognizing her obligation to them for their successful services, for the pur-

pose of enabling them to secure compensation out of the land by redeeming it, confessed judgment in their favor for a sum of money that is not shown to be greater than the value of the share of land to which they were entitled, thereby changing her liability to them from an obligation to convey them · one-third of the land to an absolute moneyed· indebtedness to the amount of the confessed judgment. She had a perfect right to do this, if she saw fit, and it constituted no fraud on the defendants. She might, under her original contract, have conveyed them one-third of the land, which would have given them the same right to redeem the whole that they had under this judgment. Neither is the amount of the judgment important to them, as it might have been to subsequent creditors, because, if it had been for one dollar, it would have given the same right to redeem, and by paying precisely the same amount, as if it had been for a million. Under any circumstances the defendants receive the full amount due them, and interest, and we fail to see how they have any grounds for complaint.

Orders affirmed.