## O. D. KINNEY *vs.* PAUL SHARVEY.

Argued Dec. 22, 1891. Decided Jan. 18, 1892.

**Insolvency—Assignment by Married Woman.**—Under the insolvent law of 1881 a married woman can make a valid assignment of all her unexempt property, *including real estate,* for the benefit of creditors, without her husband joining in its execution.

Appeal by plaintiff from an order of the district court, St. Louis county, *Stearns,* J., made July 2, 1891, dismissing the action.

Genevieve F. Bawden, of Ely, Minn., being indebted to divers persons, and insolvent, made an assignment, December 26, 1889, to the plaintiff, O. D. Kinney, of all her unexempt property, in trust to pay all her creditors who should file releases pursuant to Laws 1881, ch. 148, as amended by Laws 1889, ch. 30. She was a married woman, the wife of John T. Bawden, but he did not join in, or consent in any way to, the assignment. The plaintiff accepted the trust, and took possession of a stock of goods she had at Ely, inventoried at $5,400. The defendant was sheriff of St. Louis county, and on February 5, 1890, received for service three writs of execution upon judgments rendered that day against the husband, John T. Bawden. Claiming the goods belonged to the husband, the sheriff levied upon them to satisfy the judgments.

Kinney then brought this action against the sheriff for conversion of the goods, claiming title through the assignment. The issues were tried July 2, 1891. The plaintiff, to prove his title to the goods, offered in evidence the assignment. The defendant objected, on the ground that, Genevieve F. Bawden being a married woman,

it was void, her husband not having joined in its execution. The trial court so held, and excluded the evidence. The plaintiff's title being held void, the court dismissed the action, and entered an order to that effect. Plaintiff tendered a case containing exceptions, and it was settled, and he appealed.

*Draper, Davis & Hollister,* for appellant.

A married woman, being an insolvent debtor, may assign all of her property not exempt from execution for the benefit of her creditors under the insolvency laws of this state, and that assignment will carry all her interest in unexempt real property.

The property of a married woman is liable for her debts and torts to the same extent as if she were unmarried. 1878 G. S. ch. 69, § 2. This enables a creditor to have the benefit of execution, levy, and sale.

She shall receive the same protection of all her rights as a woman which her husband does as a man. Laws 1887, ch. 207. As a late utterance of the legislative will, this law indicates that a married woman is not to be fettered in any way beyond other people, except by express enactment.

Under the insolvency law of 1881, the words, "any debtor being insolvent," were held to include private corporations. *Trip* v. *Northwestern Nat. Bank,* 41 Minn. 400.

This court has always upheld the insolvency law to the full extent of its spirit, even if the letter of the law seemed doubtful. It has held that a receiver had the same right to recover moneys paid to a preferred creditor as an assignee. *Bliss* v. *Doty,* 36 Minn. 168.

In that case the court applied the same rule to involuntary as to voluntary proceedings. This is the construction for which appellant now contends.

An assignment does not carry the title to real estate, if the assignee, as an officer of the court, cannot distribute the proceeds; his title is only official. *King* v. *Remington,* 36 Minn. 15, 32.

That interest remaining in the insolvent was recognized in *First Nat. Bank of Winona* v. *Randall,* 38 Minn. 382; *Johnson* v. *Bray,* 35 Minn. 248; *Daniels* v. *Palmer,* Id. 347.

As against creditors of an insolvent wife, the husband has no rights

in any of her property which can be reached on execution or under the insolvent law.

If the husband joined in his wife's assignment, it would convey his property for debts not his.

Under the national bankruptcy act, the words "any person" were held to include a *feme covert, (In re O'Brien,* Bankr. Reg. Supp. 38,) also minors, *(In re Book,* 3 McLean, 317; Bump, Bankr. [5th. Ed.] 1.)

*Cash & Williams,* for respondent.

1878 G. S. ch. 69, § 2, is not repealed or modified in any way by Laws 1881, ch. 148, or Laws 1889, ch. 30.

MITCHELL, J. The question in this case is whether an insolvent married woman can make an assignment of all her non-exempt property, including real estate, for the benefit of creditors, under the insolvent law of 1881, ch. 148, without her husband joining in its execution. The claim of the defendant is that such an assignment is a conveyance, within the meaning of 1878 G. S. ch. 69, § 2, and hence invalid, unless the husband joins. Under the provisions of the section referred to, a married woman is bound by her contracts, and her property is liable for her debts, to the same extent as if unmarried. She is capable of making any contract which she might if single, "*except* that no conveyance or contract for the sale of her real estate [other than mortgages for purchase money, and leases for terms not exceeding three years] shall be valid unless her husband join with her in such conveyance." The insolvent law of 1881, section one, (1,) as amended by Laws 1889, ch. 30, provides: "Whenever any debtor shall have become insolvent, * * * he may make an assignment of all his unexempt property for the equal benefit of all his *bona fide* creditors who shall file releases of their demands against such debtor." By section two (2) it is provided that whenever any insolvent debtor shall commit certain acts of omission or commission (among which are the omission to do anything which he might lawfully do to prevent any of his creditors from obtaining a preference over other creditors, and the failure to make an assignment under section one [1] within ten [10] days after levy made on any of his property) the court may, on petition of his creditors, appoint a receiver, who shall take possession of all his unex-

empt property, convert it into money, and distribute the proceeds ratably among all his creditors who prove their claims and file releases of the debtor. We have repeatedly held that this is a bankrupt law, the purposes of which are—*First*, to secure an equal distribution of the debtor's property among his creditors; and, *second*, to secure the release of the debtor from his debts. The term "any debtor" includes any one who is capable of contracting a debt, and has done so. The foundation of bankruptcy proceedings is indebtedness. Hence it has been held that when the common-law rule has been changed so as to permit a married woman to contract debts for which her property is liable, she is amenable to the jurisdiction of the law, and may be adjudged a bankrupt, and her property sequestered for the benefit of her creditors. *In re Kinkead*, 3 Biss. 405; *In re Lyons*, 2 Sawy. 524. On the same principle, an infant is a proper subject of a bankrupt act, as to debts for which he is personally liable,—as for necessaries. *In re Book*, 3 McLean, 317. Of course the federal courts, in administering the United States bankrupt act, established no new rule of liability for debts, but simply determined the *status* of a married woman under the laws of the state where their jurisdiction was exercised, and administered the act accordingly; but their rule was that any person capable of contracting a debt was amenable to bankruptcy proceedings, and that, in so far as the common-law disabilities of a married woman were removed, she came within the jurisdiction of the act; that, whenever a plea of coverture would not avail her in an action on the debt, she might be proceeded against in bankruptcy. Neither was there any difference in this respect between voluntary and involuntary bankruptcy, for she might be a voluntary bankrupt, and surrender her property to the jurisdiction of the court for the benefit of her creditors. *In re Collins*, 3 Biss. 415.

The principle running through all the cases seems to be that the remedies of both creditor and debtor under the act are coextensive with the liability of the debtor. This has also been the rule under the English bankrupt acts. Indeed, a law would hardly be a complete bankrupt act, or fully subserve the purposes of one, if this was not so. These considerations as to the general nature and scope

of a bankrupt act will, as we think, aid very much in the solution of the question now in hand. In this state a married woman is just as capable of contracting debts, and all her property is as fully liable for them, as if she was a *feme sole*. Her creditors can resort to the same legal remedies against her for the collection of their claims as if she was single, and, if she committed any of the acts of omission or commission specified in the second section of the insolvent law, they could have a receiver appointed, and all her non-exempt property sequestered. All these things she or they could do without the husband's consent in any form. The insolvent law was certainly intended for the benefit of insolvent married women as much as of any other class of insolvent debtors. It also recognizes the right of the insolvent to an opportunity to make a voluntary surrender of his property for the benefit of his creditors, and to select the trustee who shall administer it, before creditors can proceed to have the property sequestered on their own application under section two, (2.) But, according to defendant's view, if a married woman is unfortunate enough to own a piece of nonexempt real estate, she is utterly powerless to make any valid assignment under the act, if, through the disinclination, sickness, mental incapacity, or absence of her husband, she is unable to get him to join with her in its execution. We say unable to make any valid assignment, because an assignment of her personal property alone would be invalid, because only partial. Under such circumstances, she could do nothing but sit still, and see all her property sold, and perhaps sacrificed, on legal process, and herself prevented from getting a release from her debts, unless, perhaps, some of her creditors should apply for the appointment of a receiver under section two, (2,) their right to do which might be at least doubtful if she was not at fault, because of inability, in not making an assignment. It is hardly to be supposed that the law intended to leave an insolvent debtor, merely because she was a married woman, in any such dilemma. There would also be a legal difficulty in requiring the husband to join (mere consent would not be sufficient) in an assignment under this act, for we do not see why this would not amount to a release of all his inchoate rights as husband in the real property of his wife,

—a thing which he is not required to do, nor she to have done, for the benefit of her creditors. And whether the restriction on the wife's power to convey her real estate, found in chapter sixty-nine, (69,) is intended for the wife's protection, or for the benefit of the husband, or for both, the reasons for it do not apply to an assignment under the insolvent act by the wife after she has become bankrupt by contracting debts for which all her nonexempt property is liable to be taken either on legal process or by involuntary bankruptcy proceedings. It is said that a married woman especially needs the protection of this veto power of her husband when she is confronted with bankruptcy, but it seems to us that after the debts are contracted, and her property liable to seizure or sequestration for their payment, this veto would come too late to be of avail. Why may she not then do that which if she does not do the law will do for her, without consulting the husband? An assignment under this act is merely a voluntary surrender of the debtor's property to the custody of the court for the benefit of creditors. The only difference between an assignment under the first section and the receivership under the second is that one is voluntary and the other involuntary on part of the debtor. An assignee and a receiver are alike officers of the court. The title of each is merely official, and, in either case, whatever property is left after creditors are satisfied, or the sequestration proceeding closed, belongs to the debtor, even without a formal reconveyance. *King* v. *Remington*, 36 Minn. 15, (29 N. W. Rep. 352.) In view of all these considerations, we think that in permitting a married woman, without the consent of her husband in any form, to contract debts for which all her property is liable, the law must have intended that in case of insolvency she could voluntarily surrender all of the property thus liable, to the custody of the law, for the benefit of creditors, and thus secure to herself, as well as them, the benefit of the insolvent act, without the necessity of having her husband join with her in the execution of the instrument by which that surrender is declared. It must be held either that such an assignment is not a conveyance within the meaning of 1878 G. S. ch. 69, § 2, or, if it was, that the insolvent law of 1881 so far modified or amended that section as to authorize a mar-

ried woman to make such an assignment without her husband joining in its execution. Under either view the result is that such an assignment is valid.

Order reversed.

(Opinion published 50 N. W. Rep. 1025.)