JESSIE JOSWICH v. CHARLES FABER and Another.[1]

December 2, 1904.

Nos. 14,122—(38).

**Sale by Receiver—Reformation of Conveyance.**

> An insolvent under the state law owned a mining interest at Silver Cliff, Colorado, and also certain other mining interests about two miles distant, known as the "Royal Gold Mining Company," and inventoried the same with his receiver in the following terms: "Item No. 14. A mining interest at Silver Cliff, Colorado." The receiver possessed no certificates of stock or evidences of ownership, and had no knowledge of the nature of the interest, except as described in the inventory, and sold and conveyed the same at public auction according to the description in the inventory. In an action brought by plaintiff, who acquired title by subsequent transfers, to reform the conveyances so as to include the Royal Gold Company property, *held*, that the evidence was not sufficient to justify a finding that the latter was sold by the receiver and conveyed to the purchaser.

Action in the district court for Ramsey county to reform a deed of certain mining interests made to defendant J. F. George by defendant A. R. Kiefer upon the sale by him of the assets of defendant Faber, in-

[1] Reported in 101 N. W. 614.

solvent, while acting as receiver of the insolvent, so as to describe the same as "4405 shares of the Royal Gold Mining Company"; and to reform a deed by which such interests were conveyed by George to plaintiff's grantor; and to enjoin defendants from disposing of said shares. Defendants denied that the shares mentioned were included in the scheduled assets or disposed of in the insolvency proceedings, and defendant Faber alleged that upon the winding up of said proceedings and the discharge of the receiver the shares had reverted to him and that he was now the owner thereof. The case was tried before Orr, J., who found in favor of plaintiff. From an order denying a motion for a new trial, defendants appealed. Reversed.

*Edward P. Sanborn* and *J. H. McCorkle,* for appellants.

*Fred F. Wilde* and *James Schoonmaker,* for respondent.

LEWIS, J.

March 10, 1891, defendant Faber was adjudged insolvent under the Minnesota laws, and A. R. Kiefer was appointed receiver. At that time Faber owned 333 shares of the Silver Cliff Mining Company, a Colorado corporation, which owned a mine at Silver Cliff, Custer county, Colorado; also about 130 shares of the capital stock of another corporation owning a mine at Silver Cliff. He also owned 4,405 shares of the capital stock of the Royal Gold Mining Company, an Illinois corporation, which owned two mines, known as the "Song Bird" and "Grey Eagle," about two miles distant from Silver Cliff. In making up his inventory, Faber described his mining interests as follows:

Item No. 14. A mining interest at Silver Cliff, Colorado.

Item No. 18. 500 shares of Silver Ore Mining Company of Minnesota.

In July, 1892, pursuant to notice, the receiver held a public auction of the insolvent's property, and in his report to the court stated

> That he struck off and sold to John F. George, for the sum of $16, all his right, title, and interest in the 500 shares of the capital stock of the Silver Ore Mining Company in the inventory of the insolvent herein described, and all other mining stock therein described.

The sale was duly confirmed by the court, and a conveyance executed by the receiver, in which the mining property is described as

> All the right, title, and interest of the party of the first part, as such receiver, in and to the 500 shares of the capital stock of the Silver Ore Mining Company of Minnesota, and the shares of stock of the Silver Cliff Mining Company, in the inventory made by the insolvent and on file in the matter above entitled, described, or referred to, and all the mining stock of every description in said inventory referred to.

In 1896 Kiefer was discharged as receiver, and in 1901 George conveyed his interest to Fr. F. Wilde, and described the same as follows:

> All the right, title, and interest of the said party of the first part in and to the 500 shares of capital stock of the Silver Ore Mining Company of Minnesota, and the shares of capital stock of the Silver Cliff Mining Company, purchased by the said party of the first part on the 25th day of July, A. D. 1892, from Andrew R. Kiefer, as receiver of Charles Faber, insolvent. * * * All said stock being included in the inventory made by said Charles Faber, insolvent, and filed in said court. Hereby intending to sell, assign, and convey to said Fr. F. Wilde all the mining stock embraced in the inventory of said Faber filed in said insolvency proceedings, and all his right, title, and interest in and to said stock in said mines.

Wilde subsequently conveyed to his wife, and she to plaintiff, her daughter.

This action was brought to reform the conveyances from the receiver to George and from George to Wilde to make them include the 4,405 shares of capital stock of the Royal Gold Mining Company, and to enjoin defendants from disposing of the same, upon the theory that the descriptions were intended to convey Faber's entire interests in the vicinity of Silver Cliff, although indefinite in not naming all the specific properties. The court found that the 4,405 shares of Royal Gold Mining Company were included in the inventory description above set out, and that the same were advertised and sold by the receiver to George, and through mesne conveyances to plaintiff, who was entitled

to the certificates. The assignments of error present the single question, are the findings of fact supported by the evidence?

Considering the inventory alone, as to item No. 18 there is no question. That description is complete enough to designate the property. As to item No. 14, the only definite thing mentioned is that it is a mining interest, located at Silver Cliff, Colorado. There is nothing to indicate whether such interest was evidenced by shares of capital stock in a corporation or founded upon contract or deed. It appears that the receiver, without any attempt to obtain a more particular description, advertised and sold it according to the inventory description, he having no knowledge of the existence of any certificates of stock representing the mining interest at Silver Cliff. It appears from the evidence that after the sale at the request of the purchaser, in order to cover the possibility of there being outstanding stock, words of more general description were inserted in the report of sale as follows: "And all other mining stock therein described," and at the request of the purchaser the following language was introduced in the deed of conveyance: "And all the mining stock of every description in said inventory referred to." Plaintiff insists that it was the intention of the insolvent that the description under item No. 14 of the inventory, "a mining interest at Silver Cliff," should include all mining interests owned by him in that vicinity. On the other hand, defendants assert that such was not his intention, and that he did not include in the description under that item anything but the mining interest which he held at Silver Cliff, viz., 333 shares of the Silver Cliff Mining Company, and about 130 shares of the capital stock in another company at that point; that he purposely refrained from scheduling the stock in the Royal Gold Mining Company, because at that time he considered it worthless; and that George bought only the mining interest located at Silver Cliff, which was all the receiver attempted to sell.

It cannot be inferred from the description in the inventory, notice, report, confirmation, and conveyances that the receiver knew anything about the stock in question, or intended to dispose of it at the sale. This, we believe, is admitted by defendants; but, inasmuch as the Royal Gold Mining Company's properties were located in the vicinity of Silver Cliff, about two miles distant, and mining property in that vicinity was commonly referred to as the "Silver Cliff mines," it is claimed

that the term as used in the inventory, "a mining interest at Silver Cliff," included the Song Bird and Grey Eagle mines. Faber did own other mining property immediately at Silver Cliff, and therefore the description in the inventory was correct, unless under such description it was the intention to include all of the mining interests in that vicinity, in which case the language would not be comprehensive enough, and parol evidence was admissible to show what the parties intended. The evidence with reference to the extent of territory referred to by the term "Silver Cliff mines" is contradictory, and very unsatisfactory.

The evidence relied upon by respondent to prove that it was the intention of Faber to schedule the property of the Royal Gold Mining Company under the language used is in the nature of certain admissions by Faber. Wilde testified that he had visited Silver Cliff with Faber in 1885, and had himself purchased stock in the Royal Gold Mining Company; that he was the secretary and Faber the vice president of that company; that he did not know Faber owned any property at Silver Cliff, and that afterwards Faber frequently spoke of the Royal Gold Mining Company's property as the "Silver Cliff mining interests." Wilde also testified that he himself had prepared the inventory and inserted the words referred to as a sufficient description, although, according to his statement, Faber had told him to include the shares of the Royal Gold Mining Company, which Faber denies. George testified that in a conversation with Faber, occurring three or four years after the sale, Faber said he did not know where the certificates of stock to the property were which George had purchased, but that Wilde knew all about it, and could tell him, though the name of the company and the location of its property were not mentioned. The principal evidence relied upon is a letter dated at Perham, Minnesota, September 23, 1901, written by Faber to Wilde, in which he makes the declaration that he had lost everything, and that the shares had been sold by the receiver; but the letter does not indicate what shares he referred to, although it does appear that immediately prior thereto Wilde had been endeavoring to purchase from Faber his shares of stock in the Royal Gold Mining Company.

If the question at issue depended alone upon whether Faber had originally intended to inventory all of his mining interests in the vicinity of Silver Cliff, and so treated the matter subsequently to the sale,

then possibly his conduct would be sufficient to sustain the finding that his interest in the Royal Gold Mining Company had been sold by the receiver and purchased by George. But the real question before the court is not what the insolvent may have intended—whether to schedule his entire mining interests, or keep out the property now in dispute, either because he considered it worthless or because he hoped to conceal the same for his personal benefit. The question is, did the receiver have any knowledge of the existence of this mining interest? Did he offer it for sale, and did George purchase it?

The entire interest, whatever it was, and wherever located, by operation of law passed to the receiver upon his appointment and qualification, no matter whether the property was correctly scheduled or mentioned at all in the inventory. Therefore the whole case turns upon the situation as it existed at the time of the sale and the knowledge and intent with which the parties directly concerned with the disposition of the property then acted. So far as the record shows, the receiver knew nothing whatever of the existence of the Royal Gold Mining Company, or of insolvent's interest in it. He advertised and sold whatever passed by the description in the inventory. According to the evidence, George had some doubt as to the sufficiency of the description in case the interest should turn out to be represented by certificates of stock. He had free access to Wilde, insolvent's attorney, and to Faber, at that time, and, if there was any doubt as to the location and description of the property he had purchased, it would have been a very easy thing to ascertain, and have the correct description inserted.

From a careful review of all of the evidence, we come to the conclusion that George did not purchase, and did not claim to have purchased, anything beyond what was technically described in the inventory, viz., the mining interest at Silver Cliff. There was a mining interest at Silver Cliff. The receiver so treated and disposed of it, and the purchaser bought no more than described. There is no evidence that he did not rely on the description so far as locality was concerned, and he was not misled by anyone. The receiver having been discharged in 1896, and the shares of stock in question not having been sold by him, they reverted to the insolvent by operation of law. King v. Remington, 36 Minn. 15, 30, 32, 29 N. W. 352; Kinney v. Sharvey,

48 Minn. 98, 50 N. W. 1025; First National Bank of Winona v. Randall, 38 Minn. 383, 37 N. W. 799; Atwater v. Manchester Savings Bank, 45 Minn. 344, 48 N. W. 187.

Finding no substantial evidence to sustain the findings of fact, the order denying appellants' motion for a new trial is reversed, and new trial ordered.