NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY v. DANIEL
MURPHY and Others.[1]

January 10, 1908.

Nos. 15,412—(124).

**Reformation of Mortgage.**

Action to correct, on the ground of mistake, the description of the premises in a mortgage and the certificate of sale on a foreclosure thereof, so as to include therein the land here in controversy, and to have it adjudged that neither of the defendants has any interest in or lien thereon. The answering defendants severally asserted a lien on the land by virtue of a judgment. The trial court found that no mistake was made and sustained the liens. *Held,* that the findings are sustained by the evidence.

**Assignment for Benefit of Creditors.**

The legal title of the assignor's unexempt real estate vests in the assignee in insolvency proceedings for the benefit of creditors; but no beneficial interest vests in him, and when the trust has been executed, or the proceedings finally terminated, if there remains any real estate not disposed of, it reverts to the assignor by operation of law. King v. Remington, 36 Minn. 15, followed.

**Same—Assignor's Reversionary Interest.**

This reversionary interest in the assignor is subject to the lien of a judgment entered and docketed against him pending the insolvency proceedings, subject to be defeated by a sale of the land by the assignee before the proceedings are terminated.

Action in the district court for Ramsey county to reform a certain mortgage and the certificate of sale on the foreclosure thereof. The case was tried before Bunn, J., who found that plaintiff was not entitled to a reformation of the mortgage or of the certificate of foreclosure. From an order denying its motion to amend the conclusions of law and for a new trial, plaintiff appealed. Affirmed.

*Durment & Moore,* for appellant.

*John F. Fitzpatrick,* for respondent Murphy.

*Harris Richardson* and *Harold C. Kerr,* for respondent Cady.

[1] Reported in 114 N. W. 360.

STACT, C. J.

The plaintiff brought this action in the district court of the county of Ramsey to have its mortgage upon certain real estate in the city of St. Paul, and the certificate of sale on a foreclosure of the mortgage, corrected, on the ground of mistake, so as to describe and include the land here in controversy, and, further, to have it adjudged that neither of the defendants has any interest in or lien upon such land. The defendants Murphy, Cady, and Iowa Land Company separately answered, each claiming some interest in or lien on the land in controversy. Findings of fact were made by the trial court favorable to the defendants named, and judgment directed accordingly. The plaintiff appealed from an order denying its motion for a new trial.

The tract of land actually described in the plaintiff's mortgage, and the tract claimed to have been omitted therefrom by mistake, are now known as "lots 4 and 5 of Auditor's subdivision No. 35 to St. Paul." Mr. William Dawson acquired lot 4 in 1874 and lot 5 in 1879. The mortgage here in question, as to the land in controversy, was practically a renewal of a mortgage given in 1874, and at a time when the mortgagor owned lot 4 only. The trial court, in effect, found that all of the property now known as "lot 4" and a part of the property now known as "lot 5" are now and have been since the year 1889 covered by a brick and stone building; that prior to the year 1889, and at all times herein mentioned, the building covered lot 4, but did not cover any part of lot 5 until the month of June, 1889, when it was enlarged and extended by Mr. Dawson so as to cover a part of lot 5, and until that time lot 5 was vacant and unoccupied; that in the month of October, 1887, Mr. Dawson executed a mortgage to the plaintiff, the one here in question, which was duly recorded, covering and describing by metes and bounds lot 4 only; that lot 5 was not described in or covered by the mortgage, nor was it the intention of the parties thereto at the time the mortgage was executed to include lot 5 therein, nor was it omitted therefrom by mistake; that on March 10, 1897, Mr. Dawson, being insolvent, made an assignment for the benefit of his creditors, and on November 14, 1903, the assignment proceedings were wound up and the assignee

discharged; that the assignee did not sell or dispose of lot 5, because both he and Mr. Dawson believed that it was covered by the mortgage; that the plaintiff duly foreclosed its mortgage, and the land therein described (lot 4) was purchased by it at the foreclosure sale, from which there was no redemption, and since December, 1898, the plaintiff has been and now is the owner and in possession of lot 4, and since that time has been and now is in possession of lot 5; that on ·May 18, 1899, judgment was duly entered and docketed in the district court of the county of Ramsey against Mr. Dawson, which on April 11, 1902, was duly assigned by the judgment creditor to the defendant Murphy; that on October 2, 1905, an execution was issued on the judgment, and by virtue thereof lot 5 was duly levied upon and sold to the defendant Murphy for $2,000; that subsequent to the commencement of this action, and before the time for redeeming from the execution sale, the plaintiff, pursuant to the statute in such case made and provided, deposited the money necessary to redeem from the sale and the proper bond with the sheriff making the sale; that in August, 1897, a judgment was docketed in the district court of the county of Ramsey in favor of defendant Cady against Samuel E. Dawson for $429.51, which judgment has· never been paid or satisfied; that in August, 1897, a judgment was entered and docketed in the same court in favor of defendant Iowa Land Company against Mr. Dawson, William Dawson, Jr., and Samuel E. Dawson. Part of this judgment was paid in the assignment proceedings in the matter of the assignment of Mr. Dawson, and another part in assignment proceedings in the matter of the assignment of William Dawson, Jr., by dividends paid to the Iowa Land Company, which duly executed and filed in such proceedings releases of its claim as against Mr. Dawson and William Dawson, Jr. A large part of the judgment still remains unpaid, and is still a valid, subsisting judgment as against Samuel E. Dawson.

As a conclusion of law the trial court found that the plaintiff was not entitled to a reformation of its mortgage and foreclosure sale as against the answering defendants; that the execution sale to the defendant Murphy was valid, and that he was entitled to receive the redemption money paid to the sheriff; that the judgments of the de-

fendants Cady and Iowa Land Company were liens on an undivided one-sixth interest in lot 5; and, further, except as stated, the plaintiff is the owner of the lot.

The plaintiff's assignments of error present two general questions for our consideration—one of fact, and the other of law. They are:

First. Is the finding, to the effect that lot 5 was not omitted from the description of the mortgaged premises by the mutual mistake of the parties at the time the mortgage was given, sustained by the evidence?

Second. Did the respective judgments of Murphy and his codefendants ever become a lien on the lot or any interest therein?

1. Is the finding of fact sustained by the evidence? Counsel for the plaintiff claims, with earnestness and undoubted candor, that it is not. A careful consideration, however, of the record, including the original application of the mortgagor for the loan and annotations thereon, has led us to the conclusion that the finding is sustained by the evidence.

2. The second contention of plaintiff is that the judgments of the defendant Murphy and his codefendants, respectively, never became a lien on lot 5. This involves the consideration of the nature of the title of an assignee in insolvency to the real estate of his assignor. The legal title to the assignor's unexempt real estate vests in the assignee by virtue of the assignment. The assignee, however, takes the title only in trust for the benefit of the assignor's creditors, no beneficial interest vests in him, and when the trust has been executed or the insolvency proceedings finally terminated, if there remains any real estate not disposed of by the assignee, it reverts to the assignor by operation of law. It follows that a substantial interest of some kind in his real estate remains in the assignor after he has made an assignment for the benefit of his creditors.

It was held in the case of King v. Remington, 36 Minn. 15, 29 N. W. 352, that the interest in his real estate remaining in the bankrupt was in the nature of a reversion; that the estate of the assignee in bankruptcy was similar in all respects, except its inception, to that of an assignee in a voluntary assignment for the payment of debts; and, further, that the assignment might be absolute and uncondition-

al in its terms, yet any residuum after the purposes of the assign-- ment were accomplished would revert by operation of law to the as- signor. Counsel for plaintiff suggests that this decision is not in point,. because the ruling was not necessary to the decision of the case; that. all the court decided was that Remington sustained a confidential relation to King, which required him to save the property for King, if he dealt with it at all, and that King's relation to the property was- such that the confidential relation continued notwithstanding the as- signment in bankruptcy. This is a fair statement of the conclusion reached by the court; but, in order to determine whether the relation of King to the property after the assignment was such that the con- fidential relations of the parties· as to it still continued, it was nec- essary to determine whether King had any interest in the property, after the assignment, to be protected. The decision is directly in point.

King v. Remington was followed in First National Bank of Wi- nona v. Randall, 38 Minn. 382, 37 N. W. 799, in which it was held that an assignor, who had made a general assignment for the benefit of his creditors, had such a reversionary interest in the as- signed estate as to entitle him to move to dissolve an attachment lev- ied thereon. It was followed again in Atwater v. Manchester Savings Bank, 45 Minn. 341, 48 N. W. 187, 12 L. R. A. 741, in which it was held that, where land was conveyed in trust to pay certain charges and debts, the grantor had ·a residuary interest therein which was subject to the lien of an attachment or judgment; and again in Kin- ney v. Sharvey, 48 Minn. 93, 98, 50 N. W. 1025, the court holding that the title of an assignee or receiver for the benefit of creditors is merely official, and when creditors are satisfied, or the sequestration proceedings closed, any residue of the property belongs to the as- signor without a formal conveyance. See also the case of Joswich v. Faber, 93 Minn. 387, 101 N. W. 614. Some general expressions were used by the court in the cases of Donohue v. Ladd, 31 Minn. 244, 247, 17 N. W. 381, and Ryan v. Ruff, 90 Minn. 169, 95 N. W. 1114, which, when read without reference to the questions then be- fore the court, would indicate that an assignor for the benefit of his creditors had no interest in the assigned estate. An examination of

those cases will show that the court had no purpose to, and did not, question or limit the doctrine of the King-Remington case and subsequent ones expressly affirming it.

We hold, upon principle and authority, that Mr. Dawson, after his assignment for the benefit of creditors, had a reversionary interest in the assigned estate, subject to be defeated by a sale thereof by the assignee pending the insolvency proceedings. This reversionary interest of the assignor in the assigned property was not similar to the interest of a debtor who holds the naked legal title unaccompanied by any beneficial interest therein. Fleming v. Wilson, 92 Minn. 303, 100 N. W. 4.

Nor are the cases of Baldwin v. Rogers, 28 Minn. 544, 11 N. W. 77, Horton v. Kelly, 40 Minn. 193, 41 N. W. 1031, Blake v. Boisjoli, 51 Minn. 296, 53 N. W. 637, and Aretz v. Kloos, 89 Minn. 432, 95 N. W. 216, 769, here in point; for they are based upon the fact, clearly established in each particular case, that the debtor's land was mortgaged for more than its value, and his interest therein was of no substantial value, and hence no conveyance he might make of the land would be fraudulent as to creditors. It is to be noted that none of those cases holds that, if the debtor had not sold the land, his interest would not have been subject to the lien of a judgment, and, further, that the doctrine cannot be extended to cases where the facts do not clearly bring them within the rule. Aultman & Taylor Co. v. Pikop, 56 Minn. 533, 58 N. W. 551; Fryberger v. Berven, 88 Minn. 311, 316, 92 N. W. 1125. In the case at bar the interest of the debtor was a substantial one, although it was liable to be defeated by a sale of the assigned property by the assignee. Therefore the judgment was a lien thereon. Was this interest subject to the lien of the defendant Murphy's judgment against the assignor, entered and docketed before the insolvency proceedings were closed? We answer the question in the affirmative. Atwater v. Manchester Savings Bank, 45 Minn. 341, 48 N. W. 187, 12 L. R. A. 741; Fryberger v. Berven, supra. It follows that the judgments owned by the other defendants are liens upon an undivided one-sixth interest in the lot.

3. It is also urged by plaintiff that the term "appurtenances," as used in the mortgage, is sufficient to include lot 5. The claim is

without merit, for no part of the building was on lot 5 until some two years after the mortgage was given, and in no manner was lot 5 then appurtenant to lot 4. It is further claimed, in effect, that the subsequent extension of the building by the mortgagor, so that a part of it now covers lot 5, gave the plaintiff an equitable title thereto as against the mortgagor and those claiming under him. Whatever equities the plaintiff might have, if any, as to the building itself, it is clear they could not operate as a transfer of the title of lot 5 to the plaintiff. Whether the plaintiff acquired any such equities it is needless to inquire, for the plaintiff has redeemed from defendant Murphy's execution sale, and the question now is whether he is entitled to the redemption money. The other defendants have only liens on an undivided one-sixth interest in the lot, of which the plaintiff is the owner as against them, and it can protect its interest by paying the liens.

Order affirmed.