### In re KINDERHAUS CORPORATION, Debtor.

### Bankruptcy No. 3–84–1010.

United States Bankruptcy Court, D. Minnesota.

Feb. 26, 1986.

Richard Nadler, St. Paul, Mn., for plaintiff/petitioner.

John Hedback, Minneapolis, Mn., for U.S. Trustee's Office.

James Lanning, St. Paul, Mn., for I.R.S.

James Wellner, Minneapolis, Mn., for Donald Renneke, creditor.

## ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came on for hearing on January 8, 1986, on application of the Debtor's attorney for allowance of fees and costs pursuant to 11 U.S.C. § 330, § 331, and § 506(c). Richard Nadler appeared on his own behalf; John Hedback appeared on behalf of the United States Trustee; James Lanning appeared on behalf of the Internal Revenue Service; and James Wellner appeared on behalf of Donald Renneke, a creditor. The proceeding was not reported.

Following extensive in-chambers discussion regarding the matter, the Court issued its Order on January 10, 1986, approving the Debtor's attorney's fees in the amount of $15,763.00 and expenses in the amount of $522.58, all as reasonably and necessarily incurred in connection with the case up to the date of the Order. The Order required interested parties to submit briefs within 30 days from January 10, 1986, discussing application of 11 U.S.C. § 506(c) to all or part of the attorney's fees allowed and to other administrative expenses appended to the Debtor's application, as well as the propriety of presently allowing pay-

ment of the approved fees in light of the overall circumstances of the case.

Based upon the briefs filed, arguments of counsel, and upon all the records and files herein, the Court, being fully advised in the matter, now makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I.

### FACTS

This Chapter 11 case was filed on May 31, 1984. Prior to the filing and thereafter until November 8, 1985, the Debtor was in the business of providing day-care to children, operating out of two centers in Ramsey County, Minnesota. On November 4, 1985, the Debtor, by its attorney, and other interested parties appeared before the Court for hearing on adequacy of a disclosure statement. No record was made of the proceeding. The Debtor's attorney informed the Court and the parties present that the Debtor would not be going forward with the disclosure statement and plan as it then existed, but instead, intended to cease operations and close its doors on November 8, 1985, at which time it would convert to a case under Chapter 7.

On November 5, 1985, the Debtor became involved in extensive negotiations with a competitor day-care provider, New Horizon Enterprises, Inc., for the sale of substantially all of the Debtor's viable assets free and clear of all liens. Thereafter, on November 8, 1985, the Debtor, by its attorney, and all interested parties appeared before the Court on shortened notice for hearing regarding approval of the negotiated sale. The transaction as proposed called for New Horizon Enterprises, Inc., to pay the Debtor as and for transfer of the Debtor's assets being sold, the sum of $90,000.00, and to further pay the Debtor's attorney, Richard Nadler, directly the sum of $10,000.00 as and for the Debtor's attorney's fees incurred during pendency of the Chapter 11 case. The Court declined to approve the sale as proposed, but did approve a sale to New Horizon Enterprises,

Inc., for a cash payment to the Debtor in the amount of $100,000.00, leaving the question of attorney's fees for the Debtor's attorney to be determined on later application to the Court.

Application was thereafter submitted and the matter came on for consideration on January 8, 1986. The application disclosed that Mr. Nadler had received a prepetition retainer for services to be rendered and expenses to be incurred during the pendency of the case in the amount of $7,200.00. The application sought allowance of interim attorney's fees incurred by the Debtor in the total amount of $16,480.00 and expenses advanced in the amount of $522.58. The application further sought payment of these fees and costs along with unpaid post-petition administrative expenses incurred in the ordinary course by the Debtor-in-Possession during pendency of the case in the approximate amount of $59,600.00, all as fees and expenses assessable pro rata against the secured and unsecured portions of the $100,000.00 proceeds from the sale to New Horizon Enterprises, Inc., under 11 U.S.C. § 506(c). At the time of the application, it appeared that $66,419.94 of the proceeds were secured and $33,580.06 were unencumbered.

Following extensive in-chambers discussion regarding the matter, the Court awarded attorney's fees to Mr. Nadler in the sum of $15,763.00 and expenses in the amount of $522.58. Issues with respect to payment were taken under advisement pending receipt of briefs.

## II.

### DISCUSSION AND DISPOSITION

The Internal Revenue Service claims a lien against the proceeds from the sale in the amount of $46,814.22 and objects to the invasion of any of its collateral for the payment of fees and expenses under 11 U.S.C. § 506(c). The United States Trustee suggests that the prepetition retainer should be used to calculate Mr. Nadler's entitlement to pro-rata payment from the

$33,580.06 under circumstances where presently outstanding administrative expenses exceed available funds to pay them. If the prepetition retainer be included in the calculation in this case, Mr. Nadler would be required to surrender a portion of the $7,200.00 prepetition retainer, making the surrendered portion available to pay other outstanding administrative expenses in proration. The U.S. Trustee also objects to the payment of any further attorney's fees to Mr. Nadler absent either a confirmed liquidation plan, or distribution in the ordinary course should the case be converted to a Chapter 7.

■ A prepetition retainer taken by a debtor's attorney for services to be rendered and costs to be incurred during the pendency of a bankruptcy case is held in trust, except to the extent that attorney's fees are allowed by the Court and ordered paid pursuant to 11 U.S.C. § 330 and § 331, until the case is closed or until the Court orders otherwise. Such a retainer, taken prior to the filing of a petition, becomes property of the estate upon commencement of the case, subject however, to the terms of the trust. *See* 11 U.S.C. § 541(d).

■ A prepetition retainer held in trust by a debtor's attorney to compensate for services to be rendered and costs to be incurred during the pendency of the bankruptcy case is not ordinarily available as a source of payment for other administrative expense claims under 11 U.S.C. § 503(b), except to the extent that trust funds might remain after full and final compensation has been allowed a debtor's attorney in whose favor the trust was created. However, such trust funds can be made available for other uses prior to final determination of compensation by order of the court based on cause, such as overreaching or bad faith on the part of a debtor's attorney. *See In re Ahlers*, BKY 3–84–2206 (Bankr.

Minn. 3/15/85) *aff'd* Civ. 3–85–873, The Hon. Donald Alsop (D.Minn. 10/22/85).

■ When interim compensation and reimbursement of expenses for a debtor's attorney are allowed pursuant to 11 U.S.C. § 330 and § 331, to the extent such compensation and reimbursement is ordered to be paid, payment should first be made from the prepetition retainer held. If the retainer be insufficient to effectuate full payment, further payment should come from unencumbered estate funds. However, payment from unencumbered estate funds should be allowed only after provision for existing higher priority administrative expenses, and then only pro rata based on outstanding administrative expenses of equal priority under 11 U.S.C. § 503(b).

The extent to which allowed interim compensation should be ordered paid is within the discretion of the Court, and the determination should be based on circumstances of the particular case. Even where the entire allowed amount could be satisfied out of a prepetition retainer, there might exist cause for withholding partial payment.[1] Cause for withholding in a Chapter 11 case is more readily apparent under circumstances where the retainer is insufficient to pay the allowed compensation and reimbursement in full; where no significant income to the estate is foreseeable; where no reorganization is possible; where nothing remains to be done except to effectuate complete liquidation and disbursement; and where future accrual of other administrative expenses of higher and equal priority is likely.[2]

Relating the foregoing discussion to this particular case leads to the following conclusions.

■ Of the $15,763.00 in attorney's fees and $522.58 costs approved by the Court's Order of January 10, 1986,

---

1. Unfortunately, withholding partial payment is sometimes necessary to provide incentive for completion of work necessary to the case, especially in Chapter 11 where the case is floundering, and it appears that successful reorganization is not achievable.

2. If a Chapter 11 case be converted, § 503(b) administrative expenses incurred in the converted case, will take priority over Chapter 11, § 503(b) administrative expenses. *See* 11 U.S.C. § 726(b).

$7,200.00 should be paid by application of Mr. Nadler's prepetition retainer.[3] That leaves $9,085.58 in unpaid attorney's fees, allowed by the Order, that are subject to payment as an administrative expense.[4]

When the balance owing Mr. Nadler is added to other outstanding administrative expenses of equal priority, unpaid administrative expenses presently total $68,-685.58.[5] Of the $100,000.00 proceeds from the sale, $33,580.06 appears to be unencumbered and available toward payment of all administrative expenses. Mr. Nadler's pro-rata share of the available funds is $4,365.40.

The question remains whether Mr. Nadler should be allowed to presently receive payment of his full pro-rata share. This case has been pending since May 31, 1984, without an approved disclosure statement. Nothing positive has occurred during the case, except for the near total liquidation of the Debtor's assets by Court-approved sale on November 8, 1985. The sale, itself, was more the result of publicity generated by the pending shutdown of the Debtor's operation, rather than substantial ongoing efforts of the Debtor-in-Possession or its attorney.[6]

■ In light of the present status of the case: reorganization is impossible; significant future income is dubious;[7] and nothing remains to be done, except for the important task of winding it up and making the appropriate distributions. If the case does not go forward with a liquidating plan, it will require conversion to a Chapter 7. More than three months have passed since substantial liquidation of the Debtor's assets and no plan has been filed. Under these circumstances, it would be inappropriate to allow full payment to the Debtor's attorney of his pro-rata share of the funds presently available to pay administrative expenses.

The Debtor's attorney has already received $7,200.00 in connection with the case. It would be appropriate to allow payment at this time of one-half of his pro-rata share of the funds available, or $2,182.70, as payment toward the balance of the allowed amount of his fees. No further payment should be allowed pending confirmation of a liquidation plan or distribution under Chapter 7, should the case be converted.

ACCORDINGLY, IT IS HEREBY ORDERED:

1. Of the $15,763.00 attorney's fees and $522.58 expenses allowed Debtor's attorney by Order dated January 10, 1986, $7,200.00

3. It is unnecessary to withhold payment from the retainer for any of the reasons discussed above. There has been no overreaching or bad faith shown on the part of Debtor's attorney regarding the retainer taken.

4. Mr. Nadler argues that these fees, or a substantial part of them, should be assessed against the lien claimants' share of the sale proceeds under 11 U.S.C. § 506(c). However, it has not been shown that the holders of such claims received any actual direct benefit from his services. Even his efforts in closing the transaction (resulting in the only potentially assessable attorney's fees under § 506(c)) were undertaken on behalf of the estate, and the benefit, if any, to lien claimants, was incidental. The lien claimants had their own attorneys involved at their own expense to assure that their interests were protected. Mr. Nadler also argues that he has an attorney's lien on the sale of proceeds under 26 U.S.C. § 6323(b)(8) and MINN.STAT. § 481.13. That assertion is likewise without merit. Finally, Mr. Nadler argues that the entire, outstanding post-petition administrative ex-penses accrued and unpaid in the amount of $68,685.58 should be assessed pro rata against the lien claimants' share of the sale proceeds under 11 U.S.C. § 506(c). This argument too is without merit.

5. There are no present administrative expenses of higher priority.

6. At scheduled hearing on adequacy of the Debtor's disclosure statement on November 4, 1985, Mr. Nadler informed the Court and interested parties in chambers that Kinderhaus would be closing its doors and converting to Chapter 7 on November 8, 1985. He stated that numerous attempts had been made by him and the principal of the Debtor-in-Possession to sell the business, but that no buyer could be found. Someone published the impending closure and by November 8, four days later, an agreement for sale had been reached.

7. There do exist some accounts receivable. Collectability, however is speculative.

shall be paid by application of Mr. Nadler's prepetition retainer;

2. The sum of $2,182.70 shall be paid immediately as an administrative expense out of the $4,365.40 pro-rata share of estate funds available to apply to the balance of $9,085.58 in unpaid attorney's fees;

3. No further payment of attorney's fees shall be allowed the Debtor's attorney, except upon confirmation of a liquidation plan, or upon appropriate distribution in the case, should it be converted to a case under Chapter 7.