### In re PRINTING DIMENSIONS, INC., Debtor.

### Bankruptcy No. 90–4–2589–SD.

United States Bankruptcy Court, D. Maryland, at Rockville.

May 4, 1993.

Alan S. Kerxton, Bethesda, MD, Janet M. Nesse, Washington, DC, for debtor.

James P. Koch, Baltimore, MD, Chapter 7 Trustee.

Roger M. Whelan, Washington, DC, for amicus Bankruptcy Bar Ass'n of Maryland.

Clifford J. White, III, Asst. U.S. Trustee, Kenneth Hoefer, Staff Atty., Rockville, MD, for U.S. Trustee.

## MEMORANDUM OPINION ON TREATMENT OF RETAINERS

E. STEPHEN DERBY, Bankruptcy Judge.

### I. *Statement of the Issue.*

Debtor's counsel has moved for reconsideration of an order that prohibited counsel from using a retainer before it had been earned and before the fees to which the retainer would be applied had been approved by the court. In denying reconsideration, the court concludes it is not proper for Debtor's counsel to use or apply a retainer paid by Debtor before the court has allowed fees to counsel.

Shortly after filing this case under Chapter 11, the Debtor filed an application to employ attorneys, namely, Alan S. Kerxton, Esquire and the law firm of Alan S. Kerxton, Chtd., and Janet M. Nesse, Esquire and the law firm of Gins & Seeber, P.C., as co-counsel. The case has since been converted to Chapter 7. However, the instant retainer was for services to be rendered in seeking reorganization under Chapter 11, and it is considered here, as such.

The Application disclosed that Debtor had paid an engagement retainer fee of $20,000. The full disclosure was as follows:

8. The debtor has paid an engagement retainer fee of $20,000 prior to filing the petition. Additional fees will be charged if the retainer is exhausted. The fees are to be divided between the counsel based on a combination of time and results, subject to Court approval.

Counsel's disclosure statement under 11 U.S.C. § 329 and Bankruptcy Rule 2016(b) described the compensation agreement with Debtor similarly.

The debtor has paid an initial engagement retainer of $20,000, plus $500 for the filing fee. Final fees will be based on hourly rates and results. [Rates are then set forth.] ... The primary source of the compensation paid was from the debtor's general funds.

In due course, the court entered an order authorizing the employment of Debtor's attorneys. Co-counsel was justified because lead counsel, Mr. Kerxton, was a sole practitioner and required assistance, in part to avoid scheduling conflicts involving hearing dates. However, the court modified the proposed retention order by adding that the payment and division of fees between counsel was subject to review of the court "... to avoid duplication of effort." The court also added the language at issue here: "The retainer may not be applied until fees or expenses are approved by the Court."

Co-counsel for Debtor filed an application for reconsideration of the order requesting deletion of the quoted language. The U.S. Trustee was requested, pursuant to 28 U.S.C. § 586(a)(3)(H) and (A), to comment on the application for reconsideration. The U.S. Trustee has opposed modification of the order as entered.

The Bankruptcy Bar Association for the District of Maryland was also invited to respond. The Bar Association urged the court to adopt a flexible approach that would allow an attorney to draw down on a retainer if there was an arm's length agreement between a debtor and the attorney for an advance fee for services to be rendered. With such an agreement, the Bar Association suggests that the retainer

would not be property of the estate. The court, however, would still consider the reasonableness of the attorney's compensation. On the other hand, if a retainer agreement required the retainer to be escrowed, the court should be willing to exercise discretion under 11 U.S.C. § 328(a) to modify the terms and conditions of an attorney's compensation. Such an approach would permit the court to allow debtor's attorney to draw against an escrowed retainer if it was in the best interests of all the parties. Factors to be considered could include debtor's ability to pay fees from cash flow, the duration and complexity of the case, the anticipated amount of fees to be incurred, the size of the law firm and the expected delay in compensation awards.

■ While the court agrees it has discretion to approve reasonable terms and conditions of employment for a debtor's counsel, including payment terms, it should not exercise that discretion either to deprive the debtor-in-possession of property prematurely or to abrogate the court's responsibility and authority to supervise the allowance of attorney's fees effectively.

## II. *Discussion.*

### A. Statutory framework.

The Bankruptcy Code requires the court to supervise a debtor's attorney-client relationships. Counsel for debtors may only serve with court approval. 11 U.S.C. § 327(a). Only a disinterested person who does not hold or represent an interest adverse to the estate may serve as counsel to a debtor-in-possession. *Id.* at §§ 101(14), 327(a). This oversight specifically includes legal fees. Counsel's fees must be allowed by the court; and to be allowed, fees must be reasonable and for actual and necessary services. *Id.* at §§ 328(a), 329(b), 330(a). Other provisions of the Code further define and restrict attorney fee arrangements.

All representation of a party in interest and fee arrangements, including retainers and sources of payment, must be disclosed by a debtor's counsel to the court and creditors. 11 U.S.C. § 329(a); Bankr.Rules 2014(a), 2016. The Bankruptcy Rules also require the filing of a supplemental statement within 15 days after an agreement or payment not previously disclosed. Bankr. Rule 2016(b). A request for an award of attorneys fees in an adversary proceeding must be pleaded. *Id.* at Rule 7008(b). The court may also determine if a pre- or postpetition transfer to an attorney, direct or indirect, in contemplation of, or related to, a case is excessive. If the compensation paid or agreed by a debtor within one year prepetition exceeds the reasonable value for the attorney's services, the court may cancel the agreement and order the return of excessive payments. 11 U.S.C. § 329(b); Bankr.Rule 2017.

Certain fee arrangements by attorneys are expressly forbidden. Fee splitting is prohibited, except within a law firm. 11 U.S.C. § 504. There is also a criminal penalty for fee fixing agreements. 18 U.S.C. § 155.

Counsel may file interim fee applications only once every 120 days, unless the court permits more frequent applications. 11 U.S.C. § 331. The U.S. Trustee must monitor the applications of attorneys for both employment and compensation. 28 U.S.C. §§ 586(a)(3)(A) and (3)(H). However, the court may ultimately award only reasonable compensation for actual and necessary services based on the nature, extent, and value of such services, the time spent, and the cost of comparable services, plus actual and necessary expenses. *Id.* at 330(a).

One way or another, the bankruptcy court must supervise retainer agreements between debtor and counsel. The bankruptcy court may:

1. Allow, and authorize disbursement of, interim compensation to debtor's counsel during administration of an estate. 11 U.S.C. § 331; Bankr.Rule 2016(a). *See also* Bankr.Rule 2017(b);

2. Cancel any compensation agreement or order return of payments, if excessive, made within one year prepetition for services in contemplation of, or in connection with, a bankruptcy case. 11 U.S.C. § 329; Bankr.Rules 2016(b), 2017(a);

3. Review a plan to determine if payments for services in connection with a case are reasonable. 11 U.S.C. §§ 1129(a)(4), 329(b)(1)(B); and

4. Award final compensation in a case. *Id.* at § 330; Bankr.Rule 2016(a).

### B. Case law.

Most bankruptcy courts have concluded that a prepetition retainer paid by a debtor to counsel for services in connection with a case is security for, or held in trust for, payment of fees and costs to be incurred. *In re Kinderhaus Corp.*, 58 B.R. 94 (Bankr.D.Minn.1986); *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569 (Bankr. N.D.Tex.1986); *Matter of Colin*, 44 B.R. 709 (Bankr.W.D.Mo.1984); *Matter of Independent Sales Corp.*, 73 B.R. 772, 774–75 (Bankr.S.D.Iowa 1987); *In re Chicago Lutheran Hosp. Ass'n.*, 89 B.R. 719, 734 at n. 21 (Bankr.N.D.Ill.1988); *In re Burnside Steel Foundary Co.*, 90 B.R. 942, 945 (Bankr.N.D.Ill.1988); *In re Tri–County Water Ass'n, Inc.*, 91 B.R. 547, 551 (Bankr. D.S.D.1988); *In re Leff*, 88 B.R. 105, 107 (Bankr.N.D.Tex.1988); affirmed *sub nom. Stewart v. Law Offices of Dennis Olson*, 93 B.R. 91 (N.D.Tex.1988); *In re C & P Auto Transport, Inc.*, 94 B.R. 682 (Bankr. E.D.Cal.1988); *Matter of K & R Mining, Inc.*, 105 B.R. 394, 396–98 (Bankr.N.D.Ohio 1989); *In re Crimson Investments, N.V.*, 109 B.R. 397, 402 (Bankr.D.Ariz.1989); *In re NBI, Inc.*, 129 B.R. 212 (Bankr.D.Colo. 1991); *In re Hathaway Ranch Partnership*, 116 B.R. 208, 216–218 (Bankr.C.D.Cal. 1990). The retainer is characterized as property of the estate variously under § 541(a)(3) (claim to interest in property recovered under § 329(b)); under § 541(a)(1) (all legal and equitable interests of the debtor) (*In re Tri–County Water Ass'n, Inc., supra*, 91 B.R. at 551; *In re Leff, supra*, 88 B.R. at 107); under § 541(d) (legal title to trust property) (*In re Kinderhaus Corp., supra* ); or under § 541(a)(7) when from third party and not disclosed. *In re Crimson Investments, N.V., supra*, 109 B.R. at 402. Accord, *In re Chicago Lutheran Hosp. Ass'n., supra*, 89 B.R. at 734, n. 21; *In re Burnside Steel Foundary Co., supra*, 90 B.R. at 944; *Matter of K & R Mining, Inc., supra*, 105 B.R. at 396.

Approval of the bankruptcy court must be obtained before the retainer may be applied. *Matter of Colin, supra*, 44 B.R. at 712; *In re Kinderhaus Corp., supra*, 58 B.R. at 97; *In re Tri–County Water Ass'n, Inc., supra*, 91 B.R. at 550; *In re C & P Auto Transport, Inc., supra*, 94 B.R. at 691. To allow application of the retainer without bankruptcy court approval would emasculate the specific requirements of § 331 for an award of interim compensation. *In re Chapel Gate Apartments Ltd., supra*, 64 B.R. at 573; *In re C & P Auto Transport, Inc., supra*, 94 B.R. at 689.

Words in a retainer agreement such as "nonrefundable", "earned on receipt", or "fully earned" do not alter the result, because the bankruptcy court has a paramount obligation to approve fee arrangements as reasonable. *In re Chapel Gate Apartments, Ltd., supra*, 64 B.R. at 574– 75; *In re C & P Auto Transport, Inc., supra*, 94 B.R. at 687, 690; *Matter of K & R Mining, Inc., supra*, 105 B.R. at 396–97. *Cf., In re Riggin*, 40 B.R. 458 (Bankr. D.Md.1984). Counsel, however, will not be required to share a prepetition retainer pro rata with other administrative claimants, where either the retainer is treated as security or the retainer is held in trust. *In re Kinderhaus Corp., supra; In re Burnside Steel Foundary Co., supra*, 90 B.R. at 944; *Matter of K & R Mining, Inc., supra*, 105 B.R. at 397.

Where the prepetition retainer is for prepetition services and costs that were earned prepetition, application of the retainer to the prepetition services for which the retainer was paid is appropriate. *Matter of Independent Sales Corp.*, 73 B.R. 772, 779 (Bankr.S.D.Iowa 1987) (dictum); *Stewart v. Law Offices of Dennis Olson*, 93 B.R. 91 (N.D.Tex.1988), affirming on modified grounds *sub nom., In re Leff, supra; In re St. Joseph's Hosp.*, 102 B.R. 416, 420 (Bankr.E.D.Pa.1989) (dictum); *In re Lilliston*, 127 B.R. 119, 121 (Bankr. D.Md.1991) (dictum). Further, counsel may be able to use a properly disclosed

prepetition retainer paid by a nondebtor third party, without prior court approval, if it is not property of the estate. *In re Stoecker*, 114 B.R. 965, 977–78 (Bankr. N.D.Ill.1990); *In re McDonald Bros. Constr., Inc.*, 114 B.R. 989, 993–96 (Bankr. N.D.Ill.1990). However, all prepetition retainers for bankruptcy services, regardless by whom paid, are subject to review and disgorgement under § 329(b) and Bankruptcy Rule 2017, if they are excessive or unreasonable. *In re Stoecker*, 114 B.R. at 971, 978; *In re McDonald Bros. Constr., Inc.*, 114 B.R. at 995–96.

■ If the retainer is payment in full for all services in connection with a case and no additional compensation is sought from the bankruptcy estate, some cases have found that counsel has acquired ownership of the retainer prepetition, so that the retainer does not become property of the estate unless it is recovered under § 329. *Matter of Fulton*, 80 B.R. 1009, 1010 (Bankr.D.Neb.1988); *In re Burnside Steel Foundary Co., supra*, 90 B.R. at 944–45 and fn. 1 (dictum). This court has held, however, that a debtor retains an equitable interest in the retainer to receive the services for which the retainer was paid. *In re Lilliston*, 127 B.R. at 121. Therefore, since a debtor possesses an equitable interest in a retainer on the petition date, the prepetition retainer constitutes property of the bankruptcy estate. *Id.* Accord, *In re Saturley*, 131 B.R. 509 (Bankr.D.Me.1991).

Assuming such a retainer was permitted under state law, both a classic retainer to secure an attorney's availability at a certain time and an advance payment retainer in exchange for a commitment to provide legal services have been considered by a minority of bankruptcy courts not to be property of the bankruptcy estate. Although this court disagrees, the rationale is that the ownership of such retainers is intended to pass at the time of conveyance, and therefore the debtor does not have an interest in the retainer itself at the time of filing. Consequently, it is argued, these retainers would only be subject to disclosure under § 329. *In re McDonald Bros. Constr., Inc., supra*, 114 B.R. at 996–1002.

Even the *McDonald Bros.* case, however, concludes that a security retainer held by an attorney to secure payment of fees for future services is property of the bankruptcy estate. *Id.* at 999–1000.

### C. Maryland law.

■ Maryland law that is applicable to attorney retainer agreements is recognized as applicable in this court, unless preempted by federal bankruptcy law. Pursuant to the court's local bankruptcy rules, only members of the bar of the U.S. District Court for the District of Maryland and attorneys admitted *pro hac vice* may appear as counsel in the bankruptcy court. U.S.Bankr.Ct., D. of Md., Local Bankr.Rule 4(a) (1992). An attorney who is admitted *pro hac vice* is subject to the disciplinary jurisdiction of this court. *Id.* at Local Bankr.Rule 4(a)(2). The District Court "appl[ies] the Rules of Professional Conduct as they have been adopted by the Maryland Court of Appeals." U.S.Distr.Ct., D. of Md., Local Rule 704 (1992). Therefore, either because the District Court has made the Maryland Rules of Professional Conduct applicable and this court is a unit of the district court, or because counsel is a member of the Maryland bar, and because this court is located in Maryland, the court will apply in the first instance Maryland law applicable to attorney retainers. See 28 U.S.C. § 151.

Under Maryland law, a lawyer must deposit in an attorney trust account all money entrusted to the lawyer for the benefit of a client. Md.Bus.Occ. & Prof.Code Ann. §§ 10–301 through 306 (effective October 1, 1989); Md.Rules BU1 through BU9. Trust money is defined as follows:

> (d) *Trust money.*—"Trust money" means a deposit, payment, or other money that a person entrusts to a lawyer to hold for the benefit of a client or a beneficial owner.

Md.Bus.Occ. & Prof.Code Ann. § 10–301(d).

■ While the definition of such trust money appears naturally to encompass settlement funds and proceeds and probate estate monies, the plain language also encompasses fee retainers deposited by a client with a lawyer to pay for the lawyer's

services to be rendered. This conclusion is supported by Maryland Rule BU4, which provides:

*Rule BU4. Trust Account—Required Deposits.*

Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, *unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client,* shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person.

(Emphasis supplied.) The only stated exception to the attorney trust account deposit requirement is for payment of fees already owed to the attorney or for reimbursement of expenses previously advanced. A retainer paid for fees not yet owed is not within the exception, and it must therefore be deposited in an attorney trust account.

Further support is found in the Maryland Rules of Professional Conduct at Rule 1.15(a).

*Rule 1.15. Safekeeping Property.*

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Subtitle BU of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

If a retainer constitutes trust money, it may not be used for any purpose other than the purpose for which it was entrust-

ed to the lawyer. Md.Bus.Occ. & Prof. Code Ann. § 10–306; Md.Rule BU9. A lawyer who willfully violates these provisions is subject to disciplinary proceedings under the Maryland Rules and to misdemeanor penalties. Md.Bus.Occ. & Prof. Code Ann. §§ 10–307, 10–606(b); Md.Rule BU12.

Under the Disciplinary Rules and Code of Professional Responsibility that were in effect in Maryland from 1970 to January 1, 1987, and before former Article 10, § 44 of the Ann.Code of Md. (1957) had been superseded, the Committee on Ethics of the Maryland State Bar Association had concluded that advanced fees did not constitute funds of clients, and that they were not required to be deposited into a separate escrow account under Rule 1.15 of the Maryland Rules of Professional Conduct. MSBA Ethics Opinion Docket No. 83–62. Accord, MSBA Ethics Docket No. 88–9 (3/10/88). However, the Committee did note "... that it is not uncommon for fees paid in advance to be deposited into an escrow account until earned." Docket No. 83–62.

In its later opinion, the Committee on Ethics qualified its conclusion. Although continuing to adhere to the proposition that advanced fees did not constitute funds of clients under DR 9–102 requiring deposit in a separate account, the Committee acknowledged the character of advanced fees as trust funds. It stated: "Nevertheless, we are of the opinion that advanced fees do not lose their character as funds to be held in trust for the client until earned, even though they may be intermingled with other funds of the lawyer." Ethics Docket No. 88–9, at p. 2. Further, the Committee recognized that: "Rule 1.16(d) of the Maryland Rules of Professional Conduct requires, among other things, that unearned advanced fees be returned immediately upon the termination of the lawyer's representation,...." *Id.*

The MSBA Committee on Ethics recently resolved its position by overruling its previous opinion in Ethics Docket No. 83–62. See Ethics Docket No. 92–41 (Oct. 1, 1992), Md.Bar J. (Nov./Dec., 1992), p. 44. In Docket No. 92–41 the Committee addressed

two types of retainer agreements: first, "a retainer ... paid in order that the attorney is deprived from the right of rendering services for the other party (sometimes described as an 'engagement fee')"; and second, "a retainer [that] simply represents an advance payment of fees which must be earned by the attorney at a later date." With respect to an advanced fees retainer, the Committee concluded that the retainer must be segregated because it remains the client's property until earned.

> It is the Committee's belief that until a legal fee is earned, funds advanced by the client remain the client's property and therefore must be segregated pursuant to Rule 1.15 of the Rules of Professional Conduct.... In overruling our prior Opinion, the Committee on Ethics has adopted what we believe to be the wisdom of the majority of States who have considered this matter.

> \*　　\*　　\*　　\*　　\*　　\*

> If ... the retainer is simply an advance for work to be performed, it must remain in the firm's escrow account until the monies are in fact earned.

Ethics Docket No. 92–41 at pp. 2–3.

The treatment of an engagement fee is addressed only in the Opinion's concluding paragraph, where the Committee states:

> If the retainer is 'an engagement fee' and if it is reasonable under the dictates of Rule 1.5(a), the fee can be placed in the firm's general account.

*Id.* at p. 3.

■ The Maryland rule, which the court accepts as a minimum standard, is that a retainer paid in advance for legal services to be performed remains property of the client until it is earned by the performance of services. Such an advanced fee retainer must be segregated in a separate account, and the retainer may not be drawn down for use by the attorney until it is earned. Since an advanced fee retainer and a security retainer share the common characteristic that each remains the client's property until after a fee for services rendered is due, the rule as stated applies to both. However, because in this case counsel has described the retainer paid by Debtor as "an engagement retainer fee" and as "an initial engagement retainer," it is necessary to consider whether such a characterization affects how it should be treated by counsel under the Bankruptcy Code.

## D. Analysis.

■ An engagement fee retainer is fundamentally different from an advanced fee retainer. An engagement fee retainer is not refundable; and it is paid in exchange for an attorney's commitment to accept a case, to be available to handle it, and not to represent another party. See Ethics Dkt., 92–41, *supra;* [Bar Counsel Melvin] Hirshman, *Aspects of Attorneys' Fees: Engagement Fee, Non–Refundable Retainer, Limitations on the Ability of Counsel to Set a Fee*, Md.Bar J. (April, 1984), p. 17; *In re Hathaway Ranch Partnership, supra,* 116 B.R. at 206. An engagement fee retainer is earned on receipt and does not require that services be rendered, although it must satisfy the reasonableness standards of Professional Conduct Rule 1.5(a). Md.Rules of Prof.Conduct 1.5(a); Ethics Dkt. 92–41, *supra.* Since an engagement fee is not refundable, it may immediately be drawn down by the attorney.

An advanced fee retainer, on the other hand, is paid for, and in contemplation of, professional services to be rendered. As such, it is refundable if the services are not rendered, because the advanced fee retainer remains the property of the client until it is earned and payment is due.

■ A retainer cannot be both a true engagement fee and an advance fee. As stated in *In re Hathaway Ranch Partnership,* 116 B.R. at 216:

> If the Hathaway Retainer was truly earned upon receipt by L & E then L & E would be entitled to compensation in addition to the Hathaway Retainer for all services rendered on behalf of Hathaway after receipt of the Hathaway Retainer....

> A true earned upon receipt retainer is one paid to a lawyer for which the only consideration exchanged is the promise to represent the client and no other party

in the particular matter. The consideration cannot include logically the provision of future services if the retainer is truly earned upon receipt.

Although a retainer may be described as an engagement fee, it should be treated as an advance fee in order to protect the client's expectations, if the parties intend that the retainer be used to pay for future services. In such a situation, the engagement consequences of availability and limitation of employment are incidental, and they flow naturally from the attorney client relationship.

 In the instant case, debtor's counsel characterized the $20,000 retainer as an engagement retainer fee. However, the substance of the retainer arrangement, as described, is an advanced fee retainer. It is disclosed that "[a]dditional fees will be charged *if the retainer is exhausted.*" (Emphasis supplied.). The assumption is that the initial retainer will be earned by services rendered. Consistently, counsel will divide fees based on "time and results". Further, "[f]inal fees will be based on hourly rates and results." The substantial size of the retainer at $20,000 also suggests that the parties intended the retainer as an advance payment for services to be rendered. Consequently, the instant retainer may not be applied without court approval, because it remained property of the Debtor's estate and did not become property of counsel when it was paid.

A second and alternative reason for concluding that the instant retainer was an advance fee payment is its size. Under the circumstances of this case, a $20,000, non-refundable engagement retainer that was not intended to pay for future services would be excessive and therefore unreasonable under Rule 1.5(a) of the Maryland Rules of Professional Conduct. The Debtor was insolvent and was seeking reorganization under the Bankruptcy Code. It was engaged in the business of commercial printing, and its schedules disclosed liabilities of $2,719,848, but assets of only $1,912,931. Cash on hand was just $788.00. To the extent that it was paid as a nonrefundable engagement retainer, the

$20,000 directly reduced assets available for creditors, without Debtor receiving the benefit of actual services in exchange. Although in this case counsel agreed to apply the retainer to pay for services if and when provided, there was no assurance that engaged counsel would ultimately render $20,000 of actual and necessary services.

The purported benefit received by Debtor from payment of the $20,000 as a nonrefundable retainer is illusory. The Debtor could have achieved the same assurance that counsel would undertake Debtor's representation and not represent another party by payment of an advanced fee retainer for services to be rendered. By accepting the representation, counsel would be barred from representing an adverse interest by the Rules of Professional Conduct. Md.Rules of Prof.Conduct 1.7, 1.9, 1.10 (1993). Under the circumstances of this case, where the client was insolvent and the retainer virtually eliminated Debtor's cash on hand, the payment of a $20,000 retainer could only be reasonable for Debtor if the retainer was refundable in the event that counsel did not provide actual and necessary services of comparable, reasonable value.

A third reason why this retainer should not be approved as a nonrefundable engagement retainer is that approval would frustrate the Bankruptcy Code's procedural requirements for court supervision of professional fees. The allowance of fees to a professional in a bankruptcy case is on application after prior notice to creditors and an opportunity for hearing. 11 U.S.C. §§ 330(a), 331, 102(1); Bankr.Rule 2016(a). Here there was no application or prior notice. Further, the allowance of fees may only be for actual and necessary services. 11 U.S.C. § 330(a)(1). A nonrefundable engagement fee is not by its nature to pay for services.

The court's fee disgorgement authority under 11 U.S.C. § 329(b) is not an adequate substitute for the court's prior approval of fees for services rendered. Such a position assumes counsel will remain financially responsive to a disgorgement order, on a timely basis. There is no need for the

bankruptcy estate to assume any risk of collection. Also, the burden should be on counsel to justify counsel's fee before allowance, rather than on the debtor to justify disgorgement. The later premise would create a potential for conflict between counsel and client. Neither the risk of collection nor the potential for conflict are necessary, because both can be easily avoided by treating the retainer as an advanced fee, or as security, and requiring prior fee approval by the court before ownership of the retainer may be transferred to counsel. Accord, *Bread & Chocolate, Inc.*, 148 B.R. 81, 82 (Bankr.D.D.C.1992).

A litany of reasons for not permitting nonrefundable engagement fee retainers in Chapter 11 cases was set forth in *In re NBI, Inc.*, 129 B.R. 212 (Bankr.D.Colo. 1991). The court in *NBI* described such retainers as "earned retainers" and as "advanced payments." However, the description of the retainers in the opinion matches the characteristics of the engagement retainer in this case. The retainers were fully earned on receipt and committed the firms to represent debtor to the preclusion of other employment; but they were to be credited against future services rendered, allowed counsel to seek additional compensation after exhaustion of the retainers, and were subject to disgorgement under 11 U.S.C. § 329(b). In declaring retainers with these characteristics to be unreasonable in Chapter 11 reorganizations, the court stated:

> An "earned retainer", whatever its amount, is inherently unreasonable in the context of Section 328(a). The concept of an "earned retainer" is simply an anomaly in a Chapter 11 case....
>
> "Earned retainers" are unreasonable in a [Chapter 11] bankruptcy case because they impermissibly circumvent the explicit and implicit requirements of the Bankruptcy Code and Rules pertaining to compensation of professionals, particularly debtor's counsel. The Code provides for such compensation only for *actual and necessary* legal services.... allowed only *after* such services have been provided....
>
> "Earned retainers" are unreasonable in bankruptcy because they effectively nullify the protections afforded the estate and its creditors by the Code and Rules.... Parties in interest are entitled to notice and an opportunity to be heard on matters which affect them in advance, not after the fact.
>
> "Earned retainers" also allow debtor and counsel to impermissibly usurp the Court's authority under the Code and Rules....
>
> Counsel's arguments concerning discrimination and disqualifying conflicts if the Court rejects the retainers here as "earned" are more fiction than fact.
>
> \* \* \* \* \* \*
>
> The consideration counsel gave in return for the premium they extracted appears to be no more than ethically and legally required of any attorney who agrees to represent a client in litigation, particularly a debtor in bankruptcy. Approval of compensation over and above the norm in terms of "earned" retainers under these circumstances might well create disqualifying conflicts where none otherwise exist....
>
> Deposit of the retainers in trust provides a means of balancing the interests of the parties, and further insures the Court's role in that process.
>
> \* \* \* \* \* \*
>
> However unlikely, this potential for refund is inherently inconsistent with the retainers' status as "earned" without provision of *actual* services.

*Id.* at 222–224. (Emphasis the court's).

This court agrees with the analysis of this issue under the Bankruptcy Code that is set out in the *NBI* case. Further, it is consistent with the treatment of an advanced fee retainer under Maryland law.

### III. *Conclusion.*

For these reasons, the court concludes that Debtor's counsel is not entitled to keep and use as counsel's funds a prepetition retainer for a Chapter 11 case until: (1) services for which the retainer was paid have been performed; and (2) the court has allowed fees as reasonable for actual and

necessary services on application after notice and an opportunity for hearing. Therefore, the motion for reconsideration will be denied.