### In re BRICK HEARTH PIZZA, INC., Debtor.

### No. BKY 00–33767.

United States Bankruptcy Court, D. Minnesota.

Dec. 9, 2003.

William I. Kampf, Henson & Efron PA, Minneapolis, MN, for Debtor.

Sara J. Wencil, for U.S. Trustee.

Nauni J. Manty, Minneapolis, MN, Trustee, for the estate.

ORDER RE: FINAL APPLICATION BY KAMPF & ASSOCIATES, P.A., DEBTOR'S COUNSEL, FOR ALLOWANCE OF COMPENSATION AND EXPENSES

GREGORY F. KISHEL, Chief Judge.

This Chapter 7 (converted from Chapter 11) case came on before the Court for hearing on the final application of Kampf & Associates, P.A. ("Kampf"), for allowance of compensation and expenses. William I. Kampf appeared on the application. The United States Trustee appeared by his attorney, Sarah J. Wencil. Nauni J. Manty, Trustee, appeared as counsel for the estate. Upon the application, its supporting documents, the objections of the United States Trustee and the Trustee, and the arguments of counsel, the Court makes the following order.

## THE BACKGROUND AND THE DISPUTE

The Debtor in this case was a Minnesota corporation that operated a restaurant. It filed a voluntary petition for reorganization under Chapter 11 on September 11, 2000. By an order entered on September 15, 2000, the Court approved the Debtor's employment of Kampf as counsel for the case. In its application for approval of this employment, the Debtor had disclosed that it had paid Kampf a pre-petition retainer in the sum of $5,850.00, "including the filing fee, less any pre-petition services."

The Debtor's business operations and its reorganization case foundered very quickly; a medical emergency suffered by its individual principal and a substantial loss from a burglary of its premises were the reasons. On motion of the United States Trustee, the Court converted the case to one under Chapter 7 on November 6, 2000.

In December, 2001, Kampf filed a first and final fee application. Through it, it sought allowance of compensation in the sum of $3,841.75 and expenses in the sum of $195.54, for a total of $4,037.29. It disclosed that it had a balance of $3,288.25 of its retainer, having applied $1,731.75 to pre-petition attorney fees and expenses and $830.00 to the filing fee for this case. It requested leave to apply this balance to any claim so allowed, with any unsatisfied deficiency to be treated with appropriate priority as a claim against the Chapter 7 estate.

Both the Trustee of the Debtor's bankruptcy estate ("the panel trustee") and the United States Trustee filed objections. There was only one objection to the substance of the application, which is overruled.[1] Thus, Kampf's claim is allowed in the amount sought, with the priority of an expense of administration. However, both the United States Trustee and the panel trustee objected to counsel's request for authority to apply the retainer balance to the claim. They requested that the Court order Kampf to turn over the full balance of the retainer to the Trustee, for administration and application to all allowed claims, in appropriate priority.

The parties are arrayed as follows, as to theory.

The United States Trustee and the panel trustee maintain that the retainer bal-

---

**1.** The United States Trustee objected to a component of the claim for attorney fees, in the amount of $364.00 and attributed to services in preparation for a voluntary conversion of the case. Because this never happened, the United States Trustee argues that the associated services were not "beneficial ... toward the completion of" the case, as contemplated by 11 U.S.C. § 330(a)(3) (A)(C). Counsel's explanation met this objection: recognizing the inevitability, he prepared the documents for a voluntary conversion—but his efforts to get the Debtor's principal to sign them were unavailing, due to the principal's illness.

ance in Kampf's possession is property of the estate, not subject to any lien or charge in favor of Kampf; thus, after surrender in full to the panel trustee, it would be distributed subject to the priorities of 11 U.S.C. § 726, with Kampf's allowed claim to receive the priority of an administrative expense of the Chapter 11 case.[2]

█ Kampf concedes the local authorities, state and federal, to the effect that an attorney does not take a lien in a client retainer from the simple fact of the retainer's deposit into trust with the attorney. However, it argues, a "trust relationship" is created in the giving of a retainer in a Chapter 11 case, creating an enforceable "level of comfort that [counsel] will get paid something" for services rendered in the earliest stages of the case, whether the reorganization fails or not. In Kampf's view, the benefit of this "trust relationship" runs to the attorney. Counsel's own statement in brief says it all:

There is nothing inconsistent in acknowledging that pre-petition retainers are property of the estate, but still maintaining that the professional holding on to the retainer has what might frankly be described as a *de facto priority claim to the funds contained therein.*

(Emphasis added).

In an attempt to make out a basis under state law for a special and senior claim to the retainer funds, Kampf quotes several judicial decisions:

A prepetition retainer held in trust by a debtor's attorney to compensate for services to be rendered and costs to be incurred during the pendency of the bankruptcy case is not ordinarily available as a source of payment for other administrative expense claims under 11

U.S.C. § 503(b), except to the extent that trust funds might remain after full and final compensation has been allowed a debtor's attorney in whose favor the trust was created.

. . .

When interim compensation and reimbursement of expenses for a debtor's attorney are allowed pursuant to 11 U.S.C. § 330 and § 331, to the extent such compensation and reimbursement is ordered to be paid, payment should first be made from the prepetition retainer held.

*In re Kinderhaus Corp.,* 58 B.R. 94, 97 (Bankr.D.Minn.1986), and

It is well-established that advance payments for future services are client funds *until earned* . . .

*St. Cloud Bank & Trust Co. v. Brutger,* 488 N.W.2d 852, 854 (Minn.Ct.App.1992) (emphasis added).

As support, however, these pronouncements sound far more in implication than in declaration. They never articulate the attorney's interest in a retainer in terms of a property right, vested as of the date of deposit, or vesting at any point before the attorney actually draws on the retainer to satisfy a claim for fees.

█ There is a good reason for that, of course: in the last instance, under Minnesota law an attorney does not have a specific charge in the nature of a lien against a client retainer. *St. Cloud Nat'l Bank & Trust Co. v. Brutger,* 488 N.W.2d at 855. The so-called "retaining lien," which accomplished that, was abolished by the Minnesota Legislature in 1976. 1976 Minn. Sess. Laws, Ch. 304, § 2; *Boline v.*

2. The priority would be below the expenses of administration of the Chapter 7 estate. 11 U.S.C. § 726(b) ("... in a case that has been converted to [Chapter 7] under [§ ] ... 1112, ... a claim allowed under [11 U.S.C. § ]503(b) ... incurred under [Chapter 7] after such conversion has priority over a claim allowed under [§ ]503(b) ... incurred ... before such conversion ...").

*Doty*, 345 N.W.2d 285, 288 (Minn.Ct.App. 1984).[3]

▪ Though Kampf does not articulate it as such, adopting its theory would require an override of this governing law, using the statutorily-undefined "equity powers" of the Bankruptcy Court.[4] However, the "equity power" under 11 U.S.C. § 105(a) cannot be applied to circumvent unequivocal provisions of substantive law, including relevant state law that is not expressly superseded by the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 198, 108 S.Ct. 963, 964, 99 L.Ed.2d 169 (1988); *In re Easton*, 882 F.2d 312, 314 (8th Cir.1989); *In re NWFX, Inc.*, 864 F.2d 593, 595 (8th Cir.1989); *Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 273 (8th Cir.1983).

▪ Here, at its most basic, the relevant non-bankruptcy law is the state law of attorney and client—which in this instance governs the rights of property in a retainer deposit.[5] Given the simple but unmistakable principles of that law, the Bankruptcy Court cannot invoke § 105 to create some sort of *"de facto* priority claim" in the nature of a first and preemptive call on the specific asset of a retainer deposit. Such a construct would be indistinguishable from a lien.[6] The retainer balance in

Kampf's possession simply does not enjoy such a special legal protection for counsel's enjoyment.

▪ There is a way to fit the observations in *Kinderhaus* and *Brutger* onto the seamless web. The theory is not used by those courts, but it has a resonance with their pronouncements—process-oriented as they are, rather than property-centered. To the extent that an attorney accrues any legal right against a retainer deposit by providing services, it is properly considered as one of common-law setoff, overlaid with the limitations imposed by ethical rules governing the legal profession. A *right* of setoff would accrue in value as services were rendered. However, there is no actual *transfer* of property rights in the subject funds until the attorney exercises setoff by drawing on the retainer, after complying with the contractual terms of retention and the rules of professional conduct. Before that there would be no choate charge against the funds in the favor of counsel, the retainer remaining property of the client until actually applied by counsel.

▪ This analysis comports with the Eighth Circuit's observation in *In re Mahendra*, 131 F.3d 750, 756 (8th Cir.1997):

---

**3.** The other sort of attorney's lien is the "charging lien," that is impressed on the client's interest in the money or property that is actually at issue in litigation for which the attorney was engaged. It is now codified at Minn.Stat. § 481.13. This is the only method of obtaining an attorney's lien in Minnesota. *In re Pierce*, 809 F.2d 1356, 1359–1360 (8th Cir.1987); *Boline v. Doty*, 345 N.W.2d at 288.

**4.** The cases that Kampf cites are inapposite; all are from jurisdictions where state law does grant an attorney a lien or an outright transfer of funds paid as retainer against the accrual of future fees. *In re Equipment Servs., Inc.*, 253 B.R. 724, 731 (Bankr.W.D.Va.2000); *In*

*re Printing Dimensions, Inc.*, 153 B.R. 715, 720 (Bankr.D.Md.1993).

**5.** Federal law does not create property rights in pre-petition assets that are at issue in a bankruptcy case; they are governed by state law. *Butner v. U.S.*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Oxford Dev., Ltd.*, 67 F.3d 683, 685 (8th Cir. 1995).

**6.** A lien is a hold or claim on ... property as security for a debt or charge. *Boline v. Doty*, 345 N.W.2d at 288 (citing *In re Estate of Eggert*, 245 Minn. 401, 72 N.W.2d 360 (1955)). *See also Atwater v. Manchester Savings Bank*, 45 Minn. 341, 346, 48 N.W. 187, 188 (1891) (Wm.Mitchell, J.).

Under the ethical rules applicable in most jurisdictions, the security retainer monies remain property of the client until counsel *applies* them to legal services actually performed.

(Emphasis added). It also resonates with the result in *Brutger*, that a levy in favor of a third-party judgment creditor of a client could attach to a retainer deposited with counsel, because the unapplied balance remained the property of the client. 488 N.W.2d at 855.[7]

In the context of a Chapter 11 case, this all means that upon the filing of a bankruptcy petition, the balance of a pre-petition retainer passes into the estate, as property subject to administration. As such, it is subject to turnover to the fiduciary in charge of that administration, and may be applied to other expenses of maintaining the estate. *In re Ahlers*, 794 F.2d 388, 393–394 n. 2 (8th Cir.1986), *rev'd in part on other grounds*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *In re Benjamin's-Arnolds, Inc.*, 123 B.R. 839, 840 (Bankr.D.Minn.1990). This will happen rarely, but it can in the appropriate case.

As a last fall-back, Kampf raises two variants of a "chilling effect" argument. It may not be appropriate to address such policy issues when the applicable law is as hard-and-fast as it is here. However, the exercise will give some guidance for the future application of this decision.

Kampf's first argument is a broad one: were the ruling here to go contrary to debtors' counsel in any aspect,

... the effect on smaller Chapter 11 cases would be profound. It is very possible, indeed probable, that the number of attorneys willing to take on cases similar to the one at hand would drop dramatically if there were no guarantee of any payment whatsoever. Another effect of such a policy would be an increase in hourly rates, as the successful reorganizations would be called on to subsidize the unsuccessful ones to an even greater degree than is currently the case. In the end, the chance for reorganization could effectively be foreclosed for many businesses.

To say the least, this grossly overstates the general risk to the financial interests of debtors' counsel in Chapter 11, let alone the consequences to the availability of Chapter 11 relief to small-business debtors. This case actually presented a rare scenario: a paid retainer of middling substance, a nearly-immediate and permanent termination of business operations due to two unforeseeable disasters, and the accrual of substantial administrative-expense claims in favor of trade creditors during the short pendency of the case.[8] The failure so early in the case blindsided all parties, including counsel.

However, it was even more unusual that this combination of circumstances coincided with the accrual of a substantial allow-

---

7. And, though the right of setoff is expressly preserved after a bankruptcy filing by 11 U.S.C. § 553 and has been recognized as the functional equivalent of a perfected security interest, *In re American Cent. Airlines, Inc.*, 60 B.R. 587, 590 (Bankr.N.D.Ia.1986), that does not avail Kampf either. A claim that arises in a bankruptcy case—like the claim for post-petition legal services—lacks mutuality with a claim that arose pre-petition—like the obligation to account for a retainer deposit. *United States v. Gerth*, 991 F.2d 1428, 1436

(8th Cir.1993); *In re Matthieson*, 63 B.R. 56, 58–59 (D.Minn.1986); *In re American Cent. Airlines, Inc.*, 60 B.R. at 590. Hence, setoff cannot operate with the effect of a lien, for services performed post-petition.

8. The panel trustee's analysis of filed claims showed a total of over $14,200.00 in post-petition administrative expenses owing to creditors other than Kampf—for premises rent, utilities, and supplies.

able claim for compensation in favor of the Debtor's counsel. Most small-business Chapter 11 cases that fail in their first month or two do so for reasons that were apparent before the filing, and generally involve a small attorney retainer or none at all.[9] If these cases end up in Chapter 7, there is little or no contest over a trustee's claim to retainer funds—because there was no retainer, or because counsel's claim is substantially reduced on application of 11 U.S.C. §§ 330(a)(3)(A)(C) and 330(a)(4)(A)(ii). Cases that come in with more of a fighting chance almost always involve fee applications by counsel right after their first 120 days, which on approval are generally enough to exhaust the larger retainers enabled by the clients' greater financial strength. Thus, by the time of a later conversion, there is no retainer left for the contention.

These two situations encompass the great majority of case failures in Chapter 11 that could implicate trustees' claims to retainer balances. They end up not doing so. As a matter of logic, from the simple mechanics of probability, today's ruling is unlikely to prove a disincentive to able counsel taking small-magnitude cases. The risk of an unforeseen, early self-destruct like the one at bar is just one that counsel must bear. It is low enough that it should not deter any attorney who is truly serious about this area of practice.

Kampf's other chilling-effect argument overlaps with the first. As Kampf notes, some of the earlier local cases observed that a court-mandated turnover of an attorney retainer to a trustee or other fiduciary should be limited to cases of "extraordinary circumstances," or some other showing of "cause." *In re Fitzsimmons Trucking, Inc.*, 124 B.R. 556, 560 (Bankr.

D.Minn.1991); *In re Kinderhaus Corp.*, 58 B.R. at 97. The height of this bar may have been reduced by the state-law analysis just made. In any case, a showing of "overreaching or bad faith on the part of the debtor's attorney," *Kinderhaus Corp.*, 58 B.R. at 97, clearly is not essential to a grant of turnover relief. In *Ahlers*, the Eighth Circuit took no contention with that result, where the payment of a substantial retainer had left individual debtors without liquid capital for living expenses or post-petition operations; it found "no abuse of discretion" on the bankruptcy court's finding that the early administrative insolvency of the case, due to an "excessive" retainer, had to be remedied. 794 F.2d at 393 n. 2. Here, there is no evidence at all of overreaching on Kampf's part—but that does not mean that the retainer cannot and should not be reached by the Trustee.

■ Whether this case is greatly out of the ordinary or not, turnover of the retainer balance is warranted. The administrative insolvency is the ultimate justification. Kampf's argument invites a high-minded policy analysis as to who should now bear the brunt of that—the more passive administrative-expense trade claimants, or counsel—but that is not appropriate. Such dialectics are contrived and largely based on imponderables, or at least would require a paralyzing case-by-case analysis. In the last instance, the threshold analysis of property rights should drive the result. The balance of the retainer must go to the panel trustee, into the estate's figurative pot, from there to be doled out pro rata and pursuant to Chapter 7's priorities. That result is the least tilted toward a particular constituency, the most princi-

---

9. The observation is extraneous, but this seems to be so because such cases often involve debtor's counsel inexperienced in Chapter 11 cases, unfamiliar with the Code's exacting requirements for a debtor's early performance, and unaware of just how much attorney work they require.

pled under the abstractions of the law, and ultimately the most predictable.[10]

IT IS THEREFORE ORDERED:

1. Kampf & Associates, P.A., the Debtor's counsel, is awarded compensation in the sum of $3,841.75, and expenses in the sum of $195.54, for a total of $4,037.29, for all services rendered to the Debtor in connection with this case.

2. The claim allowed under Term 1 shall have the status of an expense of administration of the Chapter 11 estate, and shall have appropriate priority under 11 U.S.C. § 726 in the administration of the Chapter 7 estate.

3. Kampf & Associates, P.A., is not authorized to offset the balance of its prepetition retainer from the Debtor against the claim allowed under Term 1. Rather, it shall turn over the full balance of that retainer, as property of the estate, to the Chapter 7 Trustee for administration.

---

10. This result is consistent with other aspects of Chapter 11's legal regime. An attorney who holds a lien against assets of the estate is perforce a secured creditor, deemed to "hold ... an interest adverse to the estate" as contemplated by 11 U.S.C. § 327(e). *In re Pierce*, 809 F.2d at 1363. A lien-holding attorney is not eligible to serve as a professional person for the estate under § 327(e). *Id.* at 1362. In turn, this prevents the allowance of counsel's administrative-expense claims against the estate, *id.* at 1363—surely an undesirable fate, regardless of the brevity or length, the failure or the success, of a reorganization effort.